Argued and submitted March 5, reversed and remanded to circuit court for further proceedings September 17, reconsideration denied October 29, 1985

EWEN,
*Respondent on Review,*

*v.*

McLEAN TRUCKING COMPANY et al,
*Defendants,*

*and*

INTERNATIONAL HARVESTER COMPANY,
*Petitioner on Review.*

(A8004-01826; CA 25947; SC S31324)

706 P2d 929

E. Joseph Dean, Portland, argued the cause for petitioner on review. With him on the petition were Charles F. Adams, Phillip D. Chadsey, and Stoel, Rives, Boley, Fraser & Wyse, Portland, and Seymour W. Croft, Chicago, Illinois.

Charles J. Merten, Portland, argued the cause for respondent on review. With him on the response to the petition were Richard S. Yugler and Merten & Fink, Portland.

Arthur C. Johnson, Eugene, filed an *amicus curiae* brief. With him on the brief were Claudia F. Ingram and Johnson, Quinn, Clifton & Williams, Eugene.

LINDE, J.

## LINDE, J.

Plaintiff is the guardian *ad litem* of Sophie S. Ewen, who was struck by a truck while crossing a street intersection. In addition to negligence actions against the trucking company and the driver, plaintiff brought a "product liability civil action," ORS 30.900, against International Harvester Company, the manufacturer of the truck, alleging that its defective design prevented the driver from seeing pedestrian traffic immediately in front and to the right of the truck. Plaintiff had judgment on a jury verdict against International Harvester, which was affirmed on appeal. *Ewen v. McLean,* 70 Or App 595, 689 P2d 1309 (1984).

Defendant's petition for review brings before this court a single issue, whether the following instruction was reversible error:

"A product is dangerously defective when it is in a condition unreasonably dangerous to the user.

"Unreasonably dangerous in this context means dangerous to an extent beyond that which would be contemplated by the ordinary purchaser of this type of product in the community. Purchaser and users is [sic] anyone who may reasonably be expected to be affected by the product, such as a pedestrian."

Defendant objected at trial and argued on appeal that the expectations of a pedestrian are not a test of dangerousness to a "user or consumer" within the meaning of the product liability law. The Court of Appeals noted that in *Phillips v. Kimwood Machine Co.,* 269 Or 485, 525 P2d 1033 (1974), this court had treated the test of reasonable consumer expectation as equivalent to a test whether a reasonable seller, with knowledge of the dangerous characteristic in question, would market the product. From this, the Court of Appeals inferred that in effect the jury is to evaluate the allegedly defective product from the perspective of a "reasonable person," and that "whether the jury is instructed to view the product from the perspective of the 'reasonable manufacturer' or the 'reasonable consumer' or the 'reasonable pedestrian' is of little moment." 70 Or App at 604 (footnote omitted). It therefore concluded that the quoted instruction was not erroneous. We reverse the decision of the Court of Appeals and remand the case to the circuit court.

ORS 30.920 provides:

"(1)   One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm or damage to property caused by that condition, if:

"(a)   The seller or lessor is engaged in the business of selling or leasing such a product; and

"(b)   The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.

"(2)   The rule stated in subsection (1) of this section shall apply, even though:

"(a)   The seller or lessor has exercised all possible care in the preparation and sale or lease of the product; and

"(b)   The user, consumer or injured party has not purchased or leased the product from or entered into any contractual relations with the seller or lessor.

"(3)   It is the intent of the Legislative Assembly that the rule stated in subsections (1) and (2) of this section shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965). All references in these comments to sale, sell, selling or seller shall be construed to include lease, leases, leasing and lessor.

"(4)   Nothing in this section shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence or under ORS chapter 72."

As subsection (3) expressly states, the substantive formulas codified in subsections (1) and (2) are to be "construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments *a* to *m* (1965)." The present issue concerns Comment *i,* which reads in part:

"The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

This is the standard for defects sometimes called the "consumer contemplation test." Defendant argues that even though a pedestrian may recover damages for injuries caused by a defective truck, the scope of the rule does not bring the pedestrian into the class of consumers who have purchased a product with ordinary knowledge of its characteristics and

whose expectations determine whether the product is dangerously defective. Neither plaintiff nor the Court of Appeals squarely maintains the contrary, that a pedestrian is a "consumer" of trucks. Rather, plaintiff takes issue with some of the theoretical reasons defendant offers for the consumer expectations test, and the Court of Appeals, as quoted above, concluded that it was immaterial whether the jury was told to assume the perspective of a manufacturer, a consumer, or an injured pedestrian, because by the objective calculus employed by a hypothetical reasonable person, each should arrive at the same measure of an alleged defect.

As a prediction of jury behavior, that may or may not be true. Trial by jury rests on the assumption that jurors will do their best to follow the law as explained by the court and that accurate instructions matter. *Cf. Sandford v. Chev. Div. Gen. Motors,* 292 Or 590, 603-04, 642 P2d 624 (1982). Certainly counsel's battles over the supplemental instruction in this case suggest that trial lawyers thought it would matter to the jurors from which perspective they should evaluate the alleged defect. The question, in any event, is not what lawyers or judges may think on that subject, but what the legislators who proposed and enacted ORS 30.920 thought.

ORS 30.920 was enacted in 1979. Its legislative history is reviewed at length in Vetri, *Legislative Codification of Strict Products Liability Law in Oregon,* 59 Or L Rev 363 (1981). In brief summary, the initiative for codifying civil liability for injuries from defective products came from business groups who were concerned about rising costs of liability insurance, which they attributed to the unpredictability of potential exposure in what was then a rapidly evolving branch of the law. In part, their sense of uncertainty concerned cases decided in other states which this court might or might not follow. Both they and their insurers desired to stabilize the rules of liability. Other witnesses and legislators, in turn, were concerned that legislation not reduce the financial protection under existing Oregon law for persons injured by dangerous products.

Both sides agreed that, if there was to be legislation at all, the starting point was the law stated in section 402A of the American Law Institute's Restatement, Second, Torts with its

interpretive Comments, although certain changes were necessary. Subsection 2(b), which eliminates any requirement of contractual privity between a plaintiff and a defendant, was expanded to refer expressly to an "injured party" other than a "user" or "consumer," and Comment *n,* concerning contributory negligence and assumption of risk, was removed from the list of Comments incorporated by reference.

The question that concerns us in the present case is what significance the legislators attached to the consumer contemplation test stated in the Restatement's Comment *i,* quoted above. Although Comment *i,* like the others, was not set out in the bill but was only incorporated by reference, its substance did not go unnoticed. In the Senate, the chief proponent of the proposal to codify Comments *a* to *m* spoke of the confusion created by courts in "moving away from the provisions of 402A." *Senate Floor Debates on S. B. 422, 60th Or. Legis. Ass'y* (May 29, 1979), tape 22, side 1, at 809 (Sen. M. Ragsdale). Opponents warned that the bill would reverse or overrule any prior decisions that were contrary to Comments *a* through *m.* Witnesses before the House Judiciary Committee were more specific. A witness for the Portland Chamber of Commerce stated:

> "The Oregon Supreme Court eroded away the rules when it refused to accept the consumer oriented rule anymore. Instead, it substituted what is called a seller oriented rule for the definition of unreasonably dangerous. The Supreme Court stated it is not what the consumer expects that is important; it is what a reasonably prudent manufacturer would do, knowing of the potential danger. Some people think that is a much more liberal rule. Some consumers think it is a much more restrictive rule, and not the rule they would like."

Minutes, House Committee on The Judiciary 9 (June 19, 1979 - - Statement of Roland E. Banks, Jr.). Another witness, whom Professor Vetri characterizes as a plaintiffs' attorney, thought that adoption of Comment *i* would make no great change in Oregon law because this court had treated the expectations of a reasonable consumer as equivalent to the standard of reasonable care for a manufacturer who markets a product knowing of its dangerous condition, and that acceptable instructions could be phrased in either or both forms. *Id.* at 30 (statement of Jim Griswold). No further committee report or floor discussion addressed these alternative views of

the extent of change, if any, made by enacting Comment *i.* The case to which the foregoing testimony referred was *Phillips v. Kimwood Machine Co., supra.* In *Phillips,* Justice Holman wrote for the court:

> "A dangerously defective article would be one which a reasonable person would not put into the stream of commerce *if he had knowledge of its harmful character.* The test, therefore, is whether the seller would be negligent if he sold the article *knowing of the risk involved.* Strict liability imposes what amounts to constructive knowledge of the condition of the product.
>
> "On the surface such a test would seem to be different than the test of 2 Restatement (Second) of Torts § 402A, Comment *i.,* of 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it.' This court has used this test in the past. * * *" (Footnotes omitted. Emphasis in original.)

269 Or 492-93. The opinion asserted that the two statements of the test are "not necessarily different standards," quoting a federal court's opinion to the effect that they are "two sides of the same standard." *Id.* at 493, *quoting Welch v. Outboard Marine Corp.,* 481 F2d 252, 254 (5th Cir 1973). It continued:

> "To elucidate this point further, we feel that the two standards are the same because a seller acting reasonably would be selling the same product which a reasonable consumer believes he is purchasing. That is to say, a manufacturer who would be negligent in marketing a given product, considering its risks, would necessarily be marketing a product which fell below the reasonable expectations of consumers who purchase it."

*Phillips v. Kimwood, supra,* 296 Or at 493. Justice Holman ended this passage of the *Phillips* opinion with the observation that to describe a dangerous defect as a condition which would make it unreasonable to market the product with knowledge of its harmful character had the advantage of preserving "familiar terms and thought processes with which courts, lawyers, and jurors customarily deal." *Id.*

Clearly the court regarded a focus on the "reasonableness" of marketing the product, knowing of its dangers, not as a departure from the Restatement's Comment *i* but as

another way to explain it.[1] In the court's view, it might be an advantage to bring the definition of a dangerously defective product back into the "familiar terms and thought processes" associated with common law negligence, as indeed this alternative phrasing did, although one may question whether jurors in fact share the familiarity of courts and lawyers with those terms. Moreover, the quoted testimony on behalf of the Portland Chamber of Commerce suggested that those who knew the *Phillips* version of the test did not agree whether it favored plaintiffs or defendants in products liability cases, some people thinking that it was "a much more liberal rule," and some consumers viewing it as "a much more restrictive rule, and not the rule that they would like." After the initial alarm raised by opponents during the first Senate debate of the bill, Comment *i* and the fate of its rephrasing in *Phillips* seem not to have remained major points of contention. This could be because those who followed the issue concluded that enactment of Comment *i* made no change in the law, or it could be that those who thought the *Phillips* phrasing preferable regretted its loss but did not think it was worth fighting over in view of gains made elsewhere in the bill.

■■     In any event, the "consumer contemplation" test of

---

[1] This appears also from Justice Howell's opinion for the Court a month before *Phillips v. Kimwood Machine Co.,* 269 Or 485, 525 P2d 1033 (1974), in *Roach v. Kononen/Ford Motor Co.,* 269 Or 457, 465, 525 P2d 125 (1974):

> "However, be all this as it may, it is generally recognized that the basic difference between negligence on the one hand and strict liability for a design defect on the other is that in strict liability we are talking about the condition (dangerousness) of an article which is designed in a particular way, while in negligence we are talking about the reasonableness of the manufacturer's actions in designing and selling the article as he did. The article can have a degree of dangerousness which the law of strict liability will not tolerate even though the actions of the designer were entirely reasonable in view of what he knew at the time he planned and sold the manufactured article. As Professor Wade points out, a way of determining whether the condition of the article is of the requisite degree of dangerouseness to be defective *(unreasonably dangerous; greater degree of danger than a consumer has a right to expect; not duly safe)* is to assume that the manufacturer knew of the product's propensity to injure as it did, and then to ask whether, with such knowledge, something should have been done about the danger before it was sold. In other words, a greater burden is placed on the manufacturer than is the case in negligence because the law assumes he has knowledge of the article's dangerous propensity which he may not reasonably be expected to have, had he been charged with negligence." (Emphasis added.)

The parenthetical phrases that we have emphasized in this quotation repeat the "consumer expectation" standard of Comment *i,* and in the surrounding text the court plainly thought that it was explaining the same standard.

Comment *i* was brought to the attention of the legislature, and it was enacted. It follows at least that a jury in a product defect case should receive some instruction phrased so as to focus on what extent of risk an ordinary consumer would contemplate when purchasing a product with the knowledge of its characteristics common to the relevant community. We do not prescribe the specific form of jury instructions. As we said in *Ireland v. Mitchell,* 226 Or 286, 294, 359 P2d 894 (1961), "A trial judge is not a mere automaton whose function is limited to reciting the words approved by statute or by the Supreme Court." The instruction can be given in different ways that are consistent with the statute. We leave trial courts free to choose the words that they think will best explain the law to the jury that has heard the particular case before the court. Whether any role remains for the instruction approved in *Phillips v. Kimwood Machine Co., supra,* 269 Or at 501 n 14, is not before us in this case because no such instruction was asked or given. Rather, we have reviewed the discussion before the legislature for the light it sheds on the assumption of the Court of Appeals that it is immaterial what perspective is chosen for evaluating an allegedly dangerous product because all "objective" tests ultimately reduce themselves to the perspective of a hypothetical "reasonable person." Whatever the jurisprudential merits of that view may be, it negates the importance that the proponents of ORS 30.920, rightly or wrongly, attached to the consumer contemplation test of Comment *i.*

■      An instruction based on Comment *i* was given in this case. The instruction left out some words that are used in the Comment and added other words that are not there. In referring to the extent of a product's danger that "would be contemplated by the ordinary purchaser of this type of product in the community," the instruction somewhat elliptically omitted reference to the consumer's knowledge of the characteristics of the product, an element that appears in Comment *i;* but that is secondary to defendant's criticism of the instruction. As we have said, the law does not oblige every judge to repeat the identical words of a prescribed formula in instructing every jury. The crux of defendant's objection, rather, is that the last sentence of the instruction extended the "consumer contemplation" test of Comment *i* to include the

expectations of anyone who might reasonably be expected to be affected by the product, "including a pedestrian."

We conclude that the statement is too broad. The word "consumer," as used in Comment *i,* does not include everyone who might be affected by the product. If the reporters, advisers, consultants, and other experts who participate in the preparation of the Restatements want to invoke the general judgment of an ordinary reasonable person, they know how to say so. *See, e.g.,* Restatement, Second, Torts §§ 11, 12 (1965) (define "Reasonably Believes" and "Reason to Know"); § 283 ("Conduct of a Reasonable Man; The Standard"); and § 291 ("Unreasonableness; How Determined * * *"). ORS 30.920(2)(b) implicitly allows an "injured party" other than a user or consumer to recover if the product causing the injury is defective and unreasonably dangerous within the meaning of ORS 30.920(1), but we have seen no indication that the legislature meant this reference to the "injured party" to alter the test for defects stated in Comment *i.*

■■ The instruction therefore was erroneous. We have given serious consideration to the question whether the error was so prejudicial as to require reversal. It can be argued that when the product is a vehicle to be used in traffic, the expectations of a driver and of a pedestrian as to the visibility of pedestrians from the driver's seat are unlikely to be so different as to lead a jury to a different result. If the instruction had only made a passing reference to the expectations of a pedestrian, submerged in otherwise correct instructions, perhaps it might be unlikely to have affected the outcome. *See Smith v. Holst,* 275 Or 29, 549 P2d 671 (1976). But here the erroneous proposition that a purchaser or user includes anyone expected to be affected by the product, "such as a pedestrian," was singled out for a supplemental instruction at plaintiff's request and over defendant's advance objection. Plaintiff stressed the expectation of an "ordinary pedestrian" beyond that of a purchaser or driver in closing argument. Plaintiff obviously regarded the point as important at trial. We are in no position to say that in fact it was unimportant.

The decision of the Court of Appeals is reversed and the case is remanded to the circuit court for further proceedings.