Argued and submitted November 10, 1994, reversed and remanded March 22, 1995

Janis R. BURNS,
*Appellant,*

*v.*

GENERAL MOTORS CORP.,
and Lyman Slack Motors,
*Respondents.*

(9209-06488; CA A81668)

891 P2d 1354

Jeremy Sarant argued the cause for appellant. With him on the briefs was J. Randolph Pickett.

John R. Reese argued the cause for respondents. With him on the brief were McCutchen, Doyle, Brown & Enersen, Robert A. Brundage, Bowman and Brooke, Vincent Galvin, Bullivant, Houser, Bailey, Pendergrass & Hoffman, I. Franklin Hunsaker and James D. Hibbard.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff appeals from an adverse judgment following a jury trial on her products liability action against the manufacturer and the seller of an allegedly uncrashworthy automobile. She contends that the trial court gave erroneous jury instructions and improperly admitted hearsay into evidence. We reverse and remand.

Plaintiff sustained serious fractures of her left ankle and right femur when she crashed her 1985 Chevrolet Sprint. She filed a product liability action against the Sprint's manufacturer, General Motors, and the dealership that sold the vehicle, on the theory that the car was uncrashworthy. Plaintiff alleged, specifically, that: (1) the Sprint's seat belt had a design flaw that permitted "inertial unlatching," *i.e.*, the seatbelt could unlatch from crash forces alone, without deliberate activation of the release mechanism; (2) because of such inertial unlatching, her seatbelt improperly released when she crashed her Sprint; and (3) her injuries would have been less severe if her seatbelt had been properly designed. The jury returned a general verdict for defendants.

■ Plaintiff argues that the trial court erred in instructing the jury on the law of products liability, specifically in giving defendant's requested instruction, which embodied the so-called "reasonable manufacturer" test. The court gave the following instructions:

> "A defendant is liable for harm caused by the product if the defendant was engaged in the business of manufacturing or selling the product and the product was in a defective condition which was unreasonably dangerous to the plaintiff * * *.

> "* * * * *

> "A product is unreasonably dangerous when it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased the product with the ordinary knowledge common to the community as to its characteristics.

> *"The law imputes to a manufacturer or supplier knowledge of the harmful character of the product whether the manufacturer or seller actually knows of it or not.*

> "A manufacturer or seller is presumed to know of harmful characteristics of its product. Therefore, a product is unreasonably dangerous if it is so harmful to persons that a reasonably prudent manufacturer or seller with this knowledge would not have placed it on the market." (Emphasis supplied.)

Plaintiff contends, as she did in excepting to the emphasized instruction at trial, that Oregon law defines an "unreasonably dangerous" product *solely* in terms of the expectations of the ordinary consumer, *i.e.*, the "consumer expectation" test. She asserts that the emphasized instruction is erroneous both because it describes an incorrect alternative test for whether a product is unreasonably dangerous and because it was likely to confuse jurors. Defendant responds that, so long as the jury is charged under the consumer expectation test, as it was here, inclusion of the instruction on the reasonable manufacturer test is appropriate, and that any instructional error was, in any event, harmless.

Before 1979, products liability in Oregon was entirely a product of the common law. As products liability evolved under Oregon common law, a manufacturer was strictly liable for personal injuries or property damage caused by its product only if the product was "dangerously defective." Whether the product was dangerously defective was assessed from the point of view of an omniscient reasonable manufacturer:

> "A dangerously defective article would be one which a reasonable person would not put into the stream of commerce if he had knowledge of its harmful character. The test, therefore, is whether the seller would be negligent if he sold the article knowing of the risk involved." *Phillips v. Kimwood Machine Co.*, 269 Or 485, 492, 525 P2d 1033 (1974).

In adopting the "reasonable manufacturer" formulation, the court, in *Phillips*, acknowledged that section 402A of *Restatement (Second) Torts* defined product defect in different terms. 269 Or at 492-93. That test is set out in Comment *i* to section 402A:

> "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

Thus, Comment *i*'s "consumer expectation" test defines "unreasonably dangerous" from the perspective of the ordinary consumer, and not from the manufacturer's perspective as prescribed in *Phillips*.

Notwithstanding that difference in perspective, the *Phillips* court concluded that the two tests were ultimately the same:

> "[W]e feel that the two standards are the same because a seller acting reasonably would be selling the same product which a reasonable consumer believes he is purchasing. That is to say, a manufacturer who would be negligent in marketing a given product, considering its risks, would necessarily be marketing a product which fell below the reasonable expectations of consumers who purchase it. * * * The advantage of describing a dangerous defect in [terms of the reasonable manufacturer test] is that it preserves the use of familiar terms and thought processes with which courts, lawyers, and jurors customarily deal." 267 Or at 493.

In 1979, the legislature codified the law of strict product liability and, in so doing, adopted a significant portion of commentary to section 402A, including Comment *i*:

> "(1)   One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition * * *[.]
>
> "* * * * *
>
> "(2)   The rule stated in subsection (1) of this section shall apply, even though:
>
> "(a)   The seller or lessor has exercised all possible care in the preparation and sale or lease of the product * * *[.]
>
> "* * * * *
>
> "(3)   It is the intent of the Legislative Assembly that the rule stated in subsections (1) and (2) of this section shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965)." ORS 30.920.

Although ORS 30.920(3) suggested legislative endorsement of the consumer expectation test set out at Comment *i*, a controversy nevertheless erupted over whether juries in products liability cases could, or should, be charged under the

consumer expectation test, the common law reasonable manufacturer test, or both. *See, e.g., Willamette Essential Oils v. Herrold & Jensen*, 68 Or App 401, 683 P2d 1374 (1984).

The Supreme Court partially resolved that controversy in *Ewen v. McLean Trucking Co.*, 300 Or 24, 706 P2d 929 (1985), holding that, because the legislature enacted ORS 30.920 with full knowledge that Comment *i* adopted the consumer expectation test, it followed

> "*at least* that a jury in a product defect case should receive some instruction phrased so as to focus on what extent of risk an ordinary consumer would contemplate when purchasing a product with knowledge of its characteristics common to the relevant community." 300 Or at 32. (Emphasis supplied.)

The *Ewen* court expressly noted that the issue of whether "any role remains for the [reasonable manufacturer] instruction approved in *Phillips v. Kimwood Machine Co.*," was not before it. *Id*. Thus, the court did not decide whether a jury is to be instructed *only* on the consumer expectation test. We are now faced with that question.

We begin with the text and context of ORS 30.920(3). *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The text is clear: The law of strict products liability is to be construed in accordance with particular comments to section 402A, including Comment *i*. Thus, ORS 30.920(3) endorses the consumer expectation test.

That does not, however, conclude our inquiry. The statute is arguably ambiguous in that, although it *requires* reference to the consumer expectation test, it does not necessarily preclude consideration of other formulations, including the reasonable manufacturer test, to the extent that they are not inconsistent with the consumer expectation test. *See Smith v. Cooper*, 256 Or 485, 494, 475 P2d 78 (1970).[1] Resort to context is unenlightening.

We turn, then, to the legislative history. That history, as recounted in *Ewen*, shows that: (1) when the legislature was considering the bill that became ORS 30.920, it was well aware that Oregon courts had adopted the reasonable

---

[1] *Accord* Dominick Vetri, *Legislative Codification of Strict Products Liability Law in Oregon*, 59 Or L Rev 363, 393 (1981).

manufacturer test in lieu of Comment *i's* consumer expectation test; (2) the measure's chief proponent stated that the codification of Comments *a-m* was intended to address "the confusion created by the courts in *'moving away from* the provisions of 402A;' " and (3) at least some of the bill's opponents, including a representative of the Portland Chamber of Commerce, felt that passage of the bill would legislatively overrule *Phillips* and its progeny. *Ewen,* 300 Or at 28-30. (Emphasis supplied.)[2] With that knowledge, the legislature adopted the commentary to section 402A, including Comment *i,* without any caveat indicating an intent to maintain the reasonable manufacturer test. "Comment *i* was brought to the attention of the legislature and it was enacted." *Id.* at 32. That history shows that the legislature did not intend to preserve the reasonable manufacturer test, but, instead, to repudiate it and designate the consumer expectation test as the *sole* test for a dangerously defective product under Oregon law.[3]

Our construction of ORS 30.920(3) is buttressed by another, more practical consideration: Instructing the jury on both the consumer expectation test and the reasonable manufacturer test creates an unacceptable risk of juror confusion and potentially erroneous verdicts. " 'Instructions which mislead or confuse are ground for a reversal or a new trial.' " *Rogers v. Meridian Park Hospital,* 307 Or 612, 616, 772 P2d 929 (1989) (quoting *Williams v. Portland Gen. Elec.,* 195 Or 597, 610, 247 P2d 494 (1952)).

Under ORS 30.920(3), the jury *must* be instructed on the consumer expectation test. *See Ewen,* 300 Or at 32. Adding an instruction that directs the jury to consider unreasonable dangerousness from the manufacturer's perspective can be highly confusing, especially where the issues before

---

[2] *See also* Vetri, 59 Or L Rev at 382-88 (recounting legislative history of ORS 30.920).

[3] We acknowledge that the only specific references to "legislatively overruling" *Phillips v. Kimwood Machine Co.* were made by opponents of the measure. *See* Vetri, 59 Or L Rev at 393. Such statements are often the least reliable indicia of legislative intent. *Shell Oil Co. v. Iowa Dept. of Revenue,* 488 US 19, 29, 109 S Ct 278, 102 L Ed 2d 186 (1988). Here, however, those statements appeared in conjunction with those of the measure's proponents, who clearly intended to repudiate the Oregon courts' "moving away from section 402A."

the jury are complex. That potential for confusion was further illustrated in this case, where the instructions presented the tests seamlessly, without distinguishing one from the other or specifying what, if any, relationship they bear to one another. A jury faced with such instructions might well conclude that a product must pass both tests to qualify as dangerously defective. That is not the law.[4]

We note, moreover, that the distinction between the consumer expectation and reasonable manufacturer tests is not merely academic. The result in some, perhaps most, product liability cases might be the same regardless of which test the jury applies; nonetheless, in some cases, the difference in the test can affect the outcome. A jury might well conclude that a product is not unreasonably dangerous under the cost/benefit calculus of an omniscient reasonable manufacturer but is still unsafe in a manner, or to an extent, not expected by an ordinary consumer.

The conduct of the parties in this case evinces that practical reality. Each party pitched its legal and evidentiary presentation to the standard that it regarded as more favorable: the consumer expectation test for plaintiff; the reasonable manufacturer test for defendants. As defendants' counsel candidly acknowledged during oral argument before this court, "In reality, there will be cases in which the different [tests] would result in different judgments."

The difference in perspective — "reasonable manufacturer" versus "ordinary consumer" — can, as a practical matter, make all the difference.[5] Thus, the court erred in

---

[4] Although perhaps less probable, it is possible that a jury, faced with an apparent inconsistency between the two tests, might decide to discard one and decide the case on the other. If the jury opted to discard the consumer expectation test, its verdict would be based on a standard other than that prescribed by law.

[5] This court has previously suggested that, because the two tests merge into a single test that views dangerous defectiveness from the point of view of a reasonable person, it makes little difference whether instructions define dangerous defectiveness in terms of one, the other, or both tests. *Ewen v. McLean Trucking Co.*, 70 Or App 595, 604, 689 P2d 1309 (1984), *rev'd* 300 Or 24, 706 P2d 929 (1985). *See also Willamette Essential Oils*, 68 Or App at 410 (Warren, J., specially concurring). However, the Supreme Court's opinion in *Ewen* rejected that assumption:

"Whatever the jurisprudential merits of that view may be, it negates the importance that the proponents of ORS 30.920, rightly or wrongly, attached to the consumer contemplation test of Comment *i*." 300 Or at 32.

giving defendants' requested instruction embodying the reasonable manufacturer test.

Defendants argue that any error was harmless. They contend first that, because inclusion of the reasonable manufacturer instruction merely furnished the jury with an "alternative" basis for imposing liability, it could not have been prejudicial. That argument strains credulity. If defendants are to be believed, their submission of the reasonable manufacturer instruction actually benefitted plaintiff because it gave the jury an additional basis for holding defendants liable. We doubt that defendants intended to do plaintiff any favors — and so, apparently, did plaintiff, who vigorously excepted to the reasonable manufacturer instruction on the bases addressed in this opinion. It is far more plausible that defendants requested the reasonable manufacturer instruction because they viewed that test as being more favorable and because they hoped to persuade the jury to apply that standard rather than the consumer expectation test.[6] Defendants' evidence and arguments to the jury confirm that less benign assessment.

Defendants also argue that any instructional error was harmless because they presented overwhelmingly persuasive proof on several key issues, particularly on the issue of whether plaintiff was wearing her seatbelt at the time of the accident.[7] We disagree. After closely examining the record, we conclude that there is competent evidence from which a reasonable jury could have returned a verdict for plaintiff. *Hall v. State*, 43 Or App 325, 328, 602 P2d 1104 (1979), *aff'd* 290 Or 19, 619 P2d 256 (1980).

---

Moreover, our prior discussions did not address the practicalities of jury deliberations, including the potential for confusion and misapplication.

[6] We note, parenthetically, that defendants did not request that the jury be instructed that it could return a verdict for plaintiff under *either* the consumer expectation test or the reasonable manufacturer test.

[7] We note that defendants' argument, although phrased as an alternative basis for affirmance, is, in fact, an argument that any instructional error was harmless because defendants were entitled to a directed verdict. Defendants did move for a directed verdict, and that motion was denied. Defendants did not cross-assign error to that denial.

Finally, defendants assert that, because we cannot tell whether the jury applied the correct test or the incorrect one to reach its verdict, we cannot conclude that the instructional error "probably" affected the outcome of the case. In so arguing, defendants invoke our standard of review for claims of instructional error: We will not reverse on the basis of an erroneous instruction unless "we can fairly say that the instruction probably created an erroneous impression of the law in the minds of the jury that affected the outcome of the case." *Paragano v. Gray*, 126 Or App 670, 677-78, 870 P2d 837 (1994). *Accord Waterway Terminals v. P.S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970).

■     We reject that argument for two reasons. First, it is axiomatic that we assume that jurors follow and apply instructions. *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 223, 493 P2d 138 (1972). Thus, contrary to defendants' contention that the evidence is in equipoise as to which instruction the jury followed, we must assume, absent clear evidence to the contrary, that the jury applied both, and may well have concluded that plaintiff's proof had to satisfy both tests. Second, reversal accords with the "we can't tell" principle of *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 357-59, 788 P2d 428 (1990). Here, as in *Whinston*, the jury returned a general verdict that may or may not have depended on a legally impermissible premise — in *Whinston*, deficient specifications of negligence; in this case, the erroneous reasonable manufacturer instruction. Because we cannot divine the basis of the general verdict, we must reverse and remand.

Plaintiff's second assignment of error pertains to the admissibility of a government auto safety report. Because of the peculiar circumstances of the admission of that study at trial, we are unable to forecast whether the same issues will arise on retrial or, if they do, in what context. *MacDonald v. Cottle*, 133 Or App 35, 40, 889 P2d 1320 (1995). Accordingly, we decline to consider that assignment of error.

Reversed and remanded.