Stanley ILHARDT, et al., Plaintiffs,

v.

**A.O. SMITH CORPORATION,
et al., Defendants.**

No. C–1–92–635.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 16, 1996.

Janet Gilligan Abaray, Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Ladd W. Beck, Caughey Kuhlman Beck & Reddin, Gibsonburg, OH, W. Dan Boone, Liddle Robinson & Shoemaker, New York City, James J. Ball, New York City, for Richard H. Braun, Ronald Anliker, Ronald C. Davis.

David Wade Peck, Barron Peck & Bennie, Cincinnati, OH, Ladd W. Beck, Caughey Kuhlman Beck & Reddin, Gibsonburg, OH, W. Dan Boone, Liddle Robinson & Shoemaker, New York City, James J. Ball, New York City, for Stanley Ilhardt.

Robert Alexander Pitcairn, Jr., Katz, Teller, Brant & Hild Co., Cincinnati, OH, Donald E. Egan, Lee Ann Watson, Linda L. Cashmore, Stewart T. Kusper, Katten, Muchin & Zavis, Chicago, IL, Kenneth J. Manning, Kevin J. English, William D. Christ, Phillips Lytle Hitchcock Blaine & Huber, Buffalo, NY, Frederick W. Morris, Minneapolis, MN, for A.O. Smith Corp., A.O. Harvestore Products, Inc.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court pursuant to the Motion by Defendants to Decertify Class Action (Doc. no. 71) and upon the responses of the parties. (Doc. nos. 79, 81, 83, 85, 87, 89, 90, 93, 96, 103, 104, 105, 114 and 115).

1. On March 25, 1994, this Court conditionally certified eight common factual issues for classwide treatment.

2. The individual issues that were conditionally certified for resolution in the class action under Rule 23(c)(4) of the Federal Rules of Civil Procedure are as follows:

 a) Whether Harvestore silos are defective in design or manufacture;

 b) Whether Harvestore silos are "oxygen-free" or "oxygen limiting;"

 c) Whether feed stored in Harvestore silos becomes toxic or contaminated;

 d) Whether feed stored in Harvestore silos becomes protein deficient or nutrient deficient;

 e) Whether livestock fed on feed from Harvestore silos become nutritionally impaired, poisoned or otherwise ill, or suffer death due to defects in the silos;

 f) Whether defendants knew or should have known of the defective design of Harvestore silos;

 g) Whether defendants misrepresented the quality of Harvestore silos, knowing of the defects;

 h) Whether defendants acted with malice, oppression or insult, entitling plaintiffs to punitive damages.

3. Geographically, the class includes members from the continental United States.

4. Defendants opposed class certification on the grounds, *inter alia*, of unmanageability, lack of superiority and predominance of individual issues.

5. The class representatives are Stanley Ilhardt, Richard M. Braun and Ronald C. Davis. Each of the class representatives is an Ohio resident and dairy farmer who has purchased Harvestore silos and is alleging economic damages.

6. Defendants are: A.O. Smith Corporation, a publicly-owned company incorporated in Delaware, with its principal executive offices located in Milwaukee, Wisconsin; and A.O. Smith Harvestore Products, Inc. ("AOSHPI"), one of A.O. Smith's wholly-owned subsidiaries, also a Delaware corporation, with its principal executive offices in DeKalb, Illinois.

7. Harvestore silos are agricultural feed storage units used to store a variety of feeds for livestock consumption. They are located on thousands of farms of diverse types and sizes throughout the United States, including those with dairy, beef, hog and poultry operations.

8. Although approximately two-hundred and sixty (260) lawsuits have been filed seeking economic damages allegedly caused by the Harvestore silo since 1980, only eight (8) cases, including this one, remain in the court system. Of the other seven cases, one is on

appeal after the dismissal of the plaintiffs' claims on summary judgment by the United States District Court for the District of Minnesota; another case has entered binding arbitration; and, another case is an uncertified class action in New York. Hence, only four individual actions remain pending before trial courts.

9. The class, as conditionally certified, includes all persons in the continental United States who purchased or leased Harvestore silos; who claim to have suffered economic damages; and who seek to recover damages under the legal theories of strict product liability, negligent design and breach of implied warranty.

10. The Harvestore silo, as erected and utilized in the 1950's to the mid-1960's, was a substantially different structure in its specifications, operating characteristics and performance from those sold in the 1970's and 1980's.

Prior to 1965, white roofs were not available on Harvestore structures. In 1965, a white roof became standard on 25' diameter structures. In 1969, the white roof became standard on 20' diameter structures and thereafter on all structures manufactured by defendants. The white roof reduced the temperature of the gas inside the structure's headspace below that found in a comparable structure with a blue roof.

Foundation design prior to 1965 did not allow for additional sealant to be added at the concrete-to-steel junction without considerable time and expense. After 1965, a different design not only allowed the use of sealers with the original installation, but also facilitated any need to add sealer later. Thus, the earlier foundations' potential for leaking and difficulty of repair was eliminated with this new design.

Within the petrochemical industry, sealer technology has changed significantly from the early 1960's to the present. The Harvestore silo has utilized these technological advancements. Since the earlier time frame, the Harvestore silo has used five different sealers to stay abreast of technology. The sealer used in the early 1960's was labeled sealer 101 or 102, and was an asphaltic-based gunnable caulking material. Since that time, sealer 72 (in 1972), a tape type preformed mastic; sealer 76 (1976) also a tape type preformed mastic; and the current material, sealer 79 (in Nov. 1978), a polyurethane chemically cured gunnable caulking material, also have been utilized. Each successive sealer has provided enhanced properties of sealing, longevity or application repeatability over its predecessors. The enhanced sealing properties improved the oxygen-limiting performance of the structure.

Earlier breather bag materials consisted of different chemically compounded resins formed into films. These films were then cut into shapes and the resulting seams welded into a completed breather bag. The limitations imposed by the film chemistry on the fabrication process created design constraints regarding bag construction and seam length. With the advent of different resins made available by the plastics industry in the early 1970's, AOSHPI was able to test and develop a bag providing stronger seams and greater film strength than previously available. Both of the above changes contributed to a greater capacity and more long-lived breather bag, hence, enhanced breather performance over earlier models.

Chain unloaders (used to unload forage materials, as distinguished from auger unloaders, used to unload grains) have changed from the late 1940's model 10 chain unloaders to the current Atlas (Model 80) chain unloader. The introduction of new materials for chains, more powerful motors and other changes has resulted in the ability to unload material more rapidly from the silo, and hence has limited the amount of time during which the unloader door must be open, exposing the interior of the structure to the outside atmosphere. Accordingly, earlier Harvestore silos with smaller, slower and less powerful unloaders differed from more modern Harvestore silos in their ability to unload forages and in the necessary time of exposure.

11. Recently, the Harvestore structure product line included 34 different models of varying diameters and heights.

12. Harvestore silos have been and are used under widely varying climatic conditions

which may affect the demands on the breathing capacity. For example, a 20' × 87' Harvestore silo located in central Ohio will perform under different climatic conditions than a similarly-sized Harvestore silo located in central Minnesota, South Carolina, California or other locales.

13. Because Harvestore silos are purchased in variable heights and diameters, are located in distinctly different climatic circumstances, are used to store different crops on different farms, and are used to store feeds fed to distinctly different animals (poultry, swine, beef cattle and dairy cattle) under distinctly different management conditions, the performance of each Harvestore silo is subject to many variables which cannot be accounted for in a single trial.

14. Proceeding with a trial on the certified questions will not end this litigation. Rather, at the conclusion of trial, assuming plaintiffs prevail, there will be no liability verdict for the Court to apply class-wide. Thousands of individual trials related to causation, affirmative defenses and individual damages will await the courts.

## *OPINION*

Since this Court granted conditional class certification in this products liability case on March 25, 1994, four Circuit Courts for different reasons have decertified classes created by District Courts in product liability cases. Those decisions and their impact on the implementation of Fed.R.Civ.P. 23 are discussed thoroughly by the Honorable S. Arthur Spiegel in *In re Telectronics Pacing Systems, Inc.,* 168 F.R.D. 203 (S.D.Ohio 1996) (Doc. no. 189, Case No. MDL 1057).

For the purposes of this case, the most significant of those Circuit Court decisions is *In re American Medical Systems, Inc.,* 75 F.3d 1069 (6th Cir.1996). That decision gives the District Courts rather specific guidelines to follow in determining whether to certify a class, as well as specific instructions regarding the responsibilities of the parties and the trial court under Rule 23 of the Federal Rules of Civil Procedure. *American Systems* mandates that District Courts conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met, and holds that the

party seeking class certification bears the burden of proving by a preponderance of the legal evidence the four prerequisites of Rule 23(a) and at least one of the subcategories of Rule 23(b). *Id.* at 1079–80.

At the time this Court considered plaintiff's Motion to Certify a Class Action in this case, plaintiff advocated the applicable law to be that "[f]or class certification purposes, the allegations of plaintiffs in support of certification are taken as true." *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). (Doc. no. 14, 1st ¶). The applicable law has changed, however, as a result of the instructions given in *American Systems.* This Court now must consider the defendant's Motion to Decertify in the light of *American Systems,* not *Blackie.*

If the parties agree to class certification or if the opposing party does not contest the assertions of the party seeking class certification as to the existence of a prerequisite, the District Court may conclude that certification is proper or that the prerequisites are properly established without making a specific finding. *American Systems,* 75 F.3d at 1079–80. In this case, however, defendants contest class certification.

### *Numerosity*

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." There is no strict numerical test; rather, the numerosity requirement compels case-by-case analysis. Numerosity may be satisfied by numbers alone. In determining numerosity, a District Judge may consider reasonable inferences drawn from facts before him at an early stage of proceedings. *Id.* at 1079.

Approximately 74,100 Harvestore structures have been sold to approximately 41,500 users. From this, The Court reasonably could infer that joinder of parties would be impractical. The evidence now presented by defendants, however, establishes that only four lawsuits remain pending in the trial courts of this country. (See Doc. no. 18, page 3, ¶ 2 and Doc. no. 87, page 7, ¶ 17).

This suggests to the Court that joinder of those who have actual claims may not be impractical, and more particularly, that, under the facts of this case, this class action would not conserve judicial resources.

The plaintiffs must establish the numerosity requirement by a preponderance of the legal evidence. Upon reconsidering this evidence under the instructions of *American Systems,* this Court concludes that a preponderance of the evidence will not support a finding that those who have *claims* against defendants are so numerous that joinder is impractical. Until such evidence supports a finding of numerosity of claims, this Court cannot rely on plaintiffs' mere allegation that 70,000 silos were sold to find numerosity over defendants' opposition. (See Conclusions of Law, Doc. No. 18, ¶ 2).

As a practical matter, however, this Court believes that plaintiffs *can* establish the numerosity prerequisite in this case. Accordingly, for our purposes here, the Court will consider numerosity to be established. The important impact of the evidence stated above will be discussed later.

*Commonality*

■ Rule 23(a)(2) requires "questions of law or fact common to the class" for certification. The mere fact that questions peculiar to each individual member of the class remain after common questions as to the defendants' liability have been resolved does not dictate a conclusion that a class action is impermissible. *American Systems,* 75 F.3d at 1081.

■ To carry their burden on this issue, plaintiffs must identify a particular defect common to all members of the class. *Id.* at 1081.

The evidence establishes that a variety of different models of Harvestore structures have been manufactured over the years since 1949. At the present time, the product line includes 34 different models of varying diameters and heights. Class members' claims will differ depending upon the model, the year of construction, where the structure is located and the particular use of the structure.

■ The common defect alleged by plaintiffs is the location of the unloader door at the bottom of the structure. When this door is opened, feed stored in the structure is exposed to air containing oxygen which reduces feed value and this has a negative impact on the livestock consuming the feed, resulting in economic damage to the farmer.

■ Plaintiffs allege that another common issue is the advertising claims made by defendant. This issue must be resolved on a case by case basis. What an individual plaintiff knew or was told, or what was warranted by defendant or others, will vary. Such differences do not support a finding of commonality in this case. *American Systems,* 75 F.3d at 1081.

As the defect consisting of the location of the unloader door does establish at least one single issue common to all members of the class, the plaintiffs have established by a preponderance of the legal evidence the commonality prerequisite to class certification. *Id.* at 1080.

*Typicality*

■ Rule 23(a)(3) requires that "claims or defenses of the representative parties be typical of the claims or defenses of the class." A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. There must be at least a common element of fact or law. The class representative's interests must be aligned with the group, and the named plaintiff, in pursuing his own claims, also must advance the interests of the class members. *Id.* at 1082.

■ The class representatives herein are in the business of feeding livestock—a business which defendants allegedly have damaged. All members of the class are in that same business and are similarly situated on the issue of whether the design of the structures sold by defendant caused the feed stored in those structures to be deficient.

In addition, the location of the unloader door at the bottom of the structure is an element of fact common to all class members'

claims. *Id.* at 1082. The plaintiffs, therefore, have established the typicality prerequisite for class certification.

*Adequacy of Representation*

 Rule 23(a)(4) allows certification only if the representative parties will fairly and adequately protect the interests of the class. In this case, the representatives share a common interest with the class members, and they are vigorously prosecuting the interests of the class through counsel. Class counsel are well qualified. Moreover, no conflict of interest on the class issues appears to exist between the interests of the representative plaintiffs and other class members. *Id.* at 1083. The plaintiffs thus have satisfied the adequacy of representation prerequisite.

*Predominance of Common Issues*

 This Court certified the class under Rule 23(b)(3). Rule 23(b)(3) requires the Court to find that the common questions predominate over any questions affecting only individual members, and that the class action procedure is superior to other available methods for the fair and efficient adjudication of the controversy.

 Issues of damages may be reserved for individual treatment, with the question of liability tried as a class action. In complex cases where no one set of operative facts establishes liability, where no single proximate cause applies to each potential class member and to each defendant, and where individual issues outnumber common issues, however, the district court should question the appropriateness of a class action for resolving the controversy. Nevertheless, when the defendant's liability can be determined on a class-wide basis because the cause of the harm is a single course of conduct which is identical as to each of the plaintiffs, a class action may be· the vehicle best suited to resolve the controversy. *American Systems,* 75 F.3d at 1084.

In this case, no one set of operative facts establishes liability. Many of the structures are different. Their installation and use also differed. No single proximate cause applies equally to each class member and to each defendant. Defendant's affirmative defenses, including failure to follow directions, contributory negligence and statute of limitations, depend on facts peculiar to each plaintiff's case. .

Although a common factual question exists in this case, the· Court is instructed to balance its existence with the greater number of questions affecting individual class members. This Court concludes that the economy to be achieved by class treatment of the stated issues is more than offset by the individualization of numerous issues relevant only to a particular plaintiff.

This Court, following the instructions of *American Systems,* holds that the few issues that might be tried on a class basis in this case, balanced against issues that must be tried individually, establish that the time saved by the class action procedure would be relatively insignificant. *Id.* at 1084–85.

Additionally, a single litigation addressing the various changes of design made over a 40–year period, the conditions of installation and the unique circumstances of each plaintiff would present a nearly insurmountable burden on the district court when compared to an individual case narrowly focused on claims of these plaintiffs regarding a specific model, a specific installation and a specific farming operation.

Under the *Erie* doctrine, this Court must apply the substantive products liability laws of each individual state whose class members' rights are being adjudicated by this lawsuit. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *American Systems,* 75 F.3d at 1085.

 *Erie* requires federal courts to apply all of the nuances and differences in state law. Courts may not ignore those differences by merging the different states' standards into one generic instruction. *In the Matter of Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1300 & 1302 (7th Cir.) *cert. denied,* ── U.S. ──, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995); *American Systems,* 75 F.3d at 1085.

 In diversity actions, federal court jury instructions must accurately describe state substantive law. *Turlington v. Phillips*

*Petroleum Co.,* 795 F.2d 434, 441 (5th Cir. 1986). A party is entitled to have its theory of the case presented to the jury if evidence, direct or circumstantial, supports the claim or defense and a request for an instruction is brought to the court's attention. *Drabik v. Stanley–Bostitch, Inc.,* 997 F.2d 496, 506 (8th Cir.1993).

In a class action of this nature on the issues certified, the parties, the Court and the jury would need to simultaneously apply the varying and inconsistent laws of more than 40 states concerning what constitutes a product defect under strict products liability. These substantive differences in state law fall into five general categories:

(a) The "test" that each state requires in determining whether a product is defective.

(b) The time at which the jury must judge the defectiveness of the product.

(c) Whether state law forbids or requires the jury to be instructed on the definition of "unreasonably dangerous."

(d) Whether it is plaintiffs' or defendants' burden to prove defectiveness.

(e) Whether the individual states even recognize a cause of action in strict products liability.

Trying and submitting this case to a jury on the issues certified would be difficult without confusing the jury as to the proper method necessary to determine the "central issue" of whether the Harvestore silo was defectively designed. *See Armentrout v. FMC Corp.,* 842 P.2d 175, 186–87 (Colo.1992); *Center Chemical Co. v. Parzini,* 234 Ga. 868, 218 S.E.2d 580, 582 (1975); *Bilotta v. Kelley Co., Inc.,* 346 N.W.2d 616, 622–23 (Minn.1984); *Burns v. General Motors Corp.,* 133 Or.App. 555, 891 P.2d 1354 (1995); *Smith v. Detroit Marine Engineering Corp.,* 712 S.W.2d 472, 475 (Tenn.App.1985).

Additionally, the jury in this class action as certified would need to determine whether to award punitive damages under state laws which impose varying burdens and inconsistent standards of proof and which maintain different approaches to the issue of bifurcation of the punitive damages question.

Due to the need to apply the substantive products liability laws, affirmative defenses, comparative fault rules and punitive damage standards of the various states, the common issues of law do not predominate in this class action. Therefore, decertification is proper. *American Medical,* 75 F.3d at 1069; *Thompson v. Midwest Foundation Independent Physicians Ass'n.,* 117 F.R.D. 108, 111 & 113 (S.D.Ohio 1987); *Chmieleski v. City Products Corp.,* 71 F.R.D. 118, 169–70 (W.D.Mo.1976).

*Superiority*

The final prerequisite the Court must consider is whether the class action as constituted is a superior method of resolving the claims of individual class members.

Generally, the Seventh Amendment forbids a court from splitting interwoven issues such as causation and comparative fault for separate resolution by different juries. *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931).

Trial of the class action issues raises causation questions which render it unmanageable. The class action will need to establish the absence or existence of a direct cause between the alleged product defect and the actual contamination of the feed without regard to the many different individual causes for toxic feed, nutritionally damaged feed, poor animal performance or livestock death. Under these circumstances, even if the plaintiffs were to prevail on one or all of the certified causation issues, the result would amount only to "generic causation." Hence, a finding for the plaintiffs on these issues would mean only that it is merely possible for the identified harm to occur. Consequently, the determination of the causation issues is generic and the individual issue of proximate causation would remain unresolved. Where, as here, no one set of operative facts establishes liability, no single proximate cause equally applies to each class member, and individual issues outnumber common issues, decertification of the class is required. *American Systems,* 75 F.3d at 1069.

When the myriad of individual issues relating to individual Harvestore models, level of

manufacturer knowledge in particular years and causation issues unique to each class member are piled upon layers of legal standards and choice of law dilemmas, this litigation as presently constituted is unmanageable. Given the sheer magnitude of the task, the difficulties of managing this class as presently constituted as a class action are inevitable and insurmountable. *Id.* at 1085.

Proceeding with a class action trial is not a superior method for resolving the claims of individual class members. Only 8 cases, including this one, remain in the court system. Of the other seven cases, one is on appeal after the dismissal of the plaintiffs' claims on summary judgment by the United States District Court for the District of Minnesota; another case has entered binding arbitration; and another case is an uncertified class action in New York. Only four individual actions are pending before trial courts. Therefore, it makes sense to permit the remaining few cases to be resolved on an individual basis where the comparative fault issues, as well as statute of limitation issues and the claims of fraud against all defendants, can be more efficiently resolved. *See Elster v. Alexander,* 76 F.R.D. 440, 443 (N.D.Ga.1977), *appeal dismissed,* 608 F.2d 196 (5th Cir.1979).

Under the record before the Court, at this time, this Court concludes that plaintiffs have not demonstrated that the class action now framed before the Court is superior to other conventional forms of litigation.

Accordingly, the Court **GRANTS** the defendants' Motion to Decertify the Class as presently formulated.

IT IS SO ORDERED.