Argued and submitted June 15, 1995; resubmitted In Banc January 9, reversed and
remanded for further proceedings February 21, petition for review allowed
June 25, 1996 (323 Or 483)

Jerrold W. JONES,
*Appellant,*

*v.*

GENERAL MOTORS CORPORATION,
a Delaware corporation,
and Wentworth Chevrolet Co.,
an Oregon corporation,
*Respondents.*

(9304-02799; CA A84036)

911 P2d 1243

Kevin Keaney argued the cause for appellant. On the briefs were Robert K. Udziela and Pozzi Wilson Atchison.

John V. Acosta argued the cause for respondents. With him on the brief were Stoel Rives Boley Jones & Grey, and Lezlie Ott Marek and Bowman and Brooke, Minneapolis, Minnesota.

De MUNIZ, J.

Landau, J., concurring.

## De MUNIZ, J.

Plaintiff appeals from a judgment entered after the court granted defendants' motion for summary judgment. We reverse.

Plaintiff is a Portland police officer. Defendant General Motors manufactured a 1991 Chevrolet Caprice that defendant Wentworth Chevrolet sold to the City of Portland (the City) for use as a patrol car. After the City purchased the car in March 1991, City mechanics installed a radio and other electrical equipment in the car. When they installed the equipment, the mechanics drilled a 3/4-inch diameter hole in the bulkhead that separates the engine compartment from the interior of the car. They used that hole instead of factory installed pass-throughs to connect wires that were encased in a plastic sleeve. The patrol car was assigned to plaintiff after the mechanics installed the equipment.

Approximately one month after plaintiff was assigned the patrol car, he began to experience flu-like symptoms and saw a physician at an immediate care center. A private physician examined him a month later and a specialist also examined him. Two months after being assigned the patrol car, plaintiff noticed a musty odor in the car. A Wentworth mechanic examined the car and indicated that the musty smell originated from "water leaking thru fire wall where a non-chev loom goes thru firewall." Plaintiff's symptoms subsided when he was away from the car.

Two City mechanics, Denkers and Schenfeld, subsequently examined the car on separate occasions. When Denkers first examined the car, it smelled slightly of windshield washer fluid, but he could not detect the source of the odor. Later, the car was returned for a second examination and it smelled strongly of windshield washer fluid. Denkers also noticed that the floor mat on the driver's side was soaked through. Denkers testified that water had entered the car through the holes drilled for the radio wires. When he sprayed water on the windshield, he observed water flowing over the bulkhead, down the wires and into the passenger

compartment.[1] He also observed a white, filmy substance growing under the floor mat on the driver's side.

When the car was brought in the second time, Schenfeld also examined it. He took the car to the wash rack, ran water down the windshield and watched it leak into the car through an eight-inch gap in the sealant between the front of the car and the bulkhead separating the engine compartment from the passenger compartment. He knew about the hole drilled for the radio wires, but said it was not the source of the water in the passenger compartment. He removed the floor mats, jute backing and rubberized asbestos sound panels from the floor and discovered a white substance growing on them. He believed that the white substance caused the odor in the car.

A City mechanic sealed the hole in the patrol car's bulkhead with silicone. There were no further reports of moisture in the patrol car. Denkers testified that, because of moisture intrusion problems in other 1991 Chevrolet Caprices belonging to the City, mechanics now install a rubber grommet sealed with silicone over the radio wire holes as a regular practice. Plaintiff's symptoms have recurred on two occasions when he has been exposed to musty or moldy smells. His physician informed him that he has a permanent condition.

Plaintiff filed this lawsuit against defendants, alleging claims based on negligence and strict product liability. In his amended complaint, he asserted that defendants were negligent:

"(a)  In distributing a vehicle with a partially non-existent seal between the cowling and bulkhead below the windshield area which allowed moisture to enter the vehicle;

"(b)  In distributing a vehicle which had no adequate sealing in the junction of the cowling and bulkhead below the vehicle's windshield to prevent the leakage of moisture into the vehicle; and

---

[1] A representative of defendant General Motors inspected the car and also concluded that the water leaked into the passenger compartment through the wiring harness for the radio equipment.

"(c) In failing to adequately inspect the vehicle to reveal the defect in the cowling/bulkhead."

He also alleged that one or more of those unreasonably dangerous defective conditions caused him physical and mental pain and suffering, including various respiratory ailments.

Before the 1995 legislative session our review of a summary judgment was to determine whether there was a genuine issue as to any material fact and whether the moving party was entitled to judgment as a matter of law, viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party. ORCP 47 C; *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 613, 892 P2d 683 (1995). The *moving* party had the burden of showing that there were no genuine issues of material fact and that he or she was entitled to judgment as a matter of law. *Moustachetti v. State of Oregon*, 319 Or 319, 321, 877 P2d 66 (1994). The 1995 legislature enacted Senate Bill 385, part of which amended ORCP 47 C by adding the underlined language:

"The motion and all supporting documents shall be served and filed at least 45 days before the date set for trial. The adverse party shall have 20 days in which to serve and file opposing affidavits and supporting documents. The moving party shall have five days to reply. The court shall have discretion to modify these stated times. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment.* A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." 1995 Or Laws, ch 618, § 5.

The legislature further provided:

"The amendments to ORCP 17, 47 C and 54 * * * apply to all actions, whether commenced before, on or after the

effective date [September 9, 1995] of this Act." 1995 Or Laws, ch 618, § 140 (2).[2]

■        The threshold issue here, thus, is whether the amendment to ORCP 47 C applies to an appeal from a summary judgment that was granted on the preamendment standard. We conclude that it does. The text of Section 140 is clear that the amendment applies to *all* actions "whether commenced before, on or after the effective date of [the] Act." Furthermore, reversing a summary judgment by applying the preamendment standard would only result in a remand to the trial court where the losing party could file a new motion for summary judgment to be determined under the 1995 amendment. Accordingly, a decision that a summary judgment did not meet the preamendment standard of review would have no practical effect.

■        In interpreting the amendment, we first consider the text and context of the statutory provision in order to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). ORCP 47 C requires a summary judgment to be granted if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[.]" Into that context the legislature added the language that purports to define the nonexistence of a material fact:

> "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

The amendment is clear that a court cannot find that there is an issue of material fact unless the evidence would permit an "objectively reasonable juror" to return a verdict for the party opposing the summary judgment. However, the amendment does not state what standard the legislature

---

[2] We share the perplexity voiced by the concurrence as to the reason for the Supreme Court's failure to mention the amendments in *Doe v. American Red Cross*, 322 Or 502, 910 P2d 364 (1996). 139 Or App at 273.

intended that a court would apply in making that determination.

Under Oregon case law applying the unamended version of ORCP 47 C, the moving party had the burden of establishing the absence of genuine issues of material fact even as to matters about which the opposing party would have the burden of proof at trial. *Seeborg v. General Motors Corporation*, 284 Or 695, 588 P2d 1100 (1978). In addition, the function of the court, in determining if a genuine issue of material fact existed under the unamended rule, was not to weigh the evidence or to resolve conflicts in it, "but solely to determine if there is an issue of fact to be tried." *Forest Grove Brick v. Strickland*, 277 Or 81, 87, 559 P2d 502 (1977). In *Seeborg*, the court likened summary judgment motions to motions for directed verdicts, and noted that "[b]efore a party has a triable issue, he or she must have sufficient evidence to be entitled to a jury determination." *Id.* at 700. "Sufficient evidence" in this context means "any evidence." *See also* Or Const, Art VII (amended) § 3.

■ The questions are how and how much the 1995 legislature altered those preexisting standards by its one sentence addition to ORCP 47 C. We look first to the text and context. On its face, the added language is capable of meaning exactly the same thing as the existing law. Its references to the way in which the record is viewed and to an "objectively reasonable juror's" ability to find for the nonmoving party signal more of an adherence to than a departure from the existing standards.

■ On the other hand, we presume that the legislature intended the amendment to mean something. Moreover, the emphasis in the amendment on the hypothetical juror's objectivity and reasonableness, and on the court's consideration of the whole record before it, could plausibly be read to mean that the court must do *some* weighing and, in some way, evaluate what an objective and reasonable juror *could* think. Additionally, the reference to the record before the court, plausibly, could contemplate that both parties' showings are germane to whether a triable factual question exists, and that the burden does not fall solely on the moving party. Because the text and context provide no clear answer, we go to the legislative history.

The legislative history shows that the amendment was intended to "federalize" the summary judgment procedure. The amendment was proposed by the Senate Committee on the Judiciary. As originally drafted, the change to ORCP 47 was one of several amendments whose primary purpose was to institute various "loser pay" provisions for court actions.[3] The loser pay concept occasioned opposition from Edward Brunet, a professor at Lewis and Clark, Northwestern School of Law, who testified that the remedy for frivolous lawsuits lay in ORCP 47 C:

> "Oregon needs to 'federalize' its summary judgment. That would be the solution [to frivolous law suits]. By 'federalizing' summary judgment, I mean getting rid of what we presently have — not in [Rule 47] but largely in the case law, largely in the Oregon Court of Appeals, and that's what I call the 'doubt standard.' Effectively what the Oregon Court of Appeals has done to summary judgment is say to trial judges is [sic] we'll reverse you if there is any doubt whatsoever that an issue of fact exists. That is not the law of summary judgment in the federal courts. The federal courts have a much easier way to get summary judgment which effectively is the directed verdict standard for looking at the evidence at summary judgment time. * * * [S]ince 1986 in the federal system, it's worked very well; there's not talk of changing that. That's what you need to be looking at and I think that would, in a nutshell, deter frivolous litigation that is currently getting to trial." Tape Recording, Senate Judiciary Subcommittee on Civil Process, February 20, 1995, Tape 19, Side A at 145.[4]

---

[3] As originally drafted, the amendment provided:

"(1) If summary judgment is entered in favor of any party other than the state or a political subdivision of the state, and the summary judgment adjudicates all claims and defenses of the party in favor of the party, the court shall enter judgment against the party who did not prevail for reasonable attorney fees, expert witness fees and all costs attributable to discovery in the action. Attorney fees shall be awarded in the manner provided by ORCP 68.

"(2) If a party to an action other than the state or a political subdivision of the state files a motion for summary judgment as to one or more claims or defenses of another party, and within 20 days before the scheduled hearing on the motion the other party repleads or otherwise takes action to voluntarily dismiss one or more of the claims or defenses that are challenged in the motion for summary judgment, the court shall not award to the party filing the motion all reasonable attorney fees and expert witness fees incurred by the moving party that are attributable to the abandoned claim or defense." Senate Bill 385, Section 5 I.

[4] Brunet's written testimony elaborated:

Following that testimony, the original proposed amendment to ORCP 47 was abandoned and the current language adopted. M. Max Williams, legislative counsel, explained the amendment to the Senate Judiciary Committee:

> "[The] attempt in that change [to ORCP 47] is to, again, overrule certain Oregon Court of Appeals cases with respect to summary judgment, in an effort to move Oregon's summary judgment standard closer to that standard used by the federal courts and this is done by defining the 'no genuine issue as to material fact' language in that particular rule." Tape Recording, Senate Judiciary Committee, May 8, 1995, Tape 147, Side A at 344.

The language of the amendment paraphrases language found in *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 US 574, 586-87, 106 S Ct 1348, 89 L Ed 2d 538 (1986):

> "[T]he issue of fact must be 'genuine.' Fed Rules Civ Proc 56(c), (e). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is

---

"To the extent that Senate Bill 385 is aimed at reducing the number of frivolous lawsuits that are brought in Oregon courts, it has a salutary purpose. Frivolous litigation is a problem and needs to be deterred. However, there is already an excellent procedure designed to reduce 'sham' or frivolous suits — summary judgment.

"In the federal system summary judgments are readily granted and routinely affirmed on appeal. *See* E. Brunet, M. Redish & M. Reiter, *Summary Judgment: Federal Law and Practice* (Shepard's McGraw-Hill, 1994) (appellate reversal rate in federal court roughly the same for summary judgment when compared to overall reversal rate). However, Oregon's Rule 47, while much the same as the federal rule in text, has been hurt greatly by a series of appellate reversals of summary judgment. In essence, the Oregon Court of Appeals will reverse a summary judgment order if there is 'doubt' about whether a genuine issue of material fact exists. This doubt standard, which was first announced in the Second Circuit's infamous decision in *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946), has been repudiated in federal courts and specifically rejected by the United States Supreme Court. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Rather than risk huge law enforcement problems with loser pays legislation, the legislature should turn its attention to improving Rule 47 to rejuvenate summary judgment and make Oregon summary judgment more effective. More traditional and incremental reforms through improving summary judgment is the answer to the problem of frivolous litigation. Adoption of loser pays legislation interferes too much with the market and holds risks far too great to chance for our state." Senate Judiciary Subcommittee on Civil Process, SB 385, Feb. 20, 1995, Ex. F.

a *genuine issue for trial.'* Fed Rule Civ Proc 56(e) (emphasis added). See also Advisory Committee Note to 1963 Amendment of Fed Rules of Civ Proc 56(e), 28 USC App, p 626 (purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial'). *Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'* " (Some citations omitted; footnote omitted.)

*Matsushita*, cited in Brunet's written testimony, *see* n 3 above, was one of three 1986 Supreme Court decisions regarding summary judgments. The other two are *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 106 S Ct 2505, 91 L Ed 2d 202 (1986), and *Celotex Corp. v. Catrett*, 477 US 317, 106 S Ct 2548, 91 L Ed 2d 265 (1986). In *Liberty Lobby*, the court noted that "the threshold inquiry [is] determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. The standard "mirrors the standard for a directed verdict[.]" *Id.* In explanation, the court quoted from *Improvement Co. v. Munson*, 14 Wall 442, 448 (1872):

" 'Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a *scintilla* of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' " *Id.* at 251 (emphasis in original).

Insofar as the Oregon summary judgment cases are contrary to the "federal standard," the legislature has overruled them. We also conclude that the new standard has brought with it a change in the parties' evidentiary burdens on a motion for summary judgment.

The federal standard to determine a genuine issue of fact "mirrors" the directed verdict standard, under which, if a plaintiff

> "does not present enough evidence within his case-in-chief to support a reasonable finding in his favor, a district court has a duty to direct a verdict in favor of the opposing party. When considering the propriety of the grant or denial of a motion for directed verdict, the correct standard is whether or not, viewing the evidence as a whole, there is substantial evidence present that could support a finding, by reasonable jurors, for the nonmoving party. 'Substantial evidence is more than a mere scintilla.' *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed 126 (1938)[.]" *Chisholm Bros. Farm Equip. Co. v. International Harv. Co.*, 498 F2d 1137, 1140 (9th Cir 1974) (some citations omitted; footnote omitted).

A directed verdict is granted after viewing the evidence as a whole. Correspondingly, on summary judgment, the court cannot determine whether "no objectively reasonable juror could return a verdict for the adverse party," as required by the 1995 amendment, without considering the facts presented by both sides.

In his dissenting opinion in *Celotex*, 477 US at 330-31, Justice Brennan explained the burdens of proof on a motion for summary judgment:[5]

> "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment. This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion which always remains on the moving party. The court need not decide whether the moving party has satisfied its ultimate burden of persuasion unless and until the court finds that the moving party has discharged its initial burden of production.
>
> "The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment. * * * If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence — using any of the

---

[5] Justice Brennan did not take issue in his dissent with the allocation of the burden of proof.

materials specified in Rule 56(c) — that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery.

"If the burden of persuasion at trial would be on the *nonmoving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." (Some citations omitted; emphasis in original.)[6]

It is evident from legislative history that the amendment to ORCP 47 likewise alters the evidentiary burden on a motion for summary judgment. Before the amendment, the *moving* party had the burden to show the nonexistence of a material issue of fact. On May 23, 1995, Senator Bryant testified on SB 385 on the floor of the Senate:

"Section 5 of the bill amends ORCP 47 C, relating to summary judgment. Under current law, the courts will not grant summary judgment where the court finds there is a genuine issue of material fact. Some have expressed the view that under current law, a motion for summary judgment must be denied unless it is affirmatively shown beyond a reasonable doubt that there is no possibility of a question of fact of any kind. That view, in fact, expresses the current

---

[6] The court also explained in *Liberty*, 477 US at 249:

"As *Adickes* [*v. S. H. Kress & Co.*, 398 US 144, 90 S Ct 1598, 26 L Ed 2d 142 (1970)] and [*First National Bank of Arizona v.*] *Cities Service* [*Co.*, 391 US 253, 88 S Ct 1575, 20 L Ed 2d 569 (1968)] indicate, *there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party*. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (Citations omitted; emphasis supplied.)

reluctance of courts to grant summary judgment. As the Oregon Court of Appeals has applied the standard in recent years, any dispute, however farfetched the opponent's position might be, seems to justify a denial of summary judgment. For instance, I cite the case of *Dargen v. King*, [87 Or App 349, 742 P2d 72, *rev den* 304 Or 437 (1987),] in which summary judgment for the defendant in a dog bite case was reversed based upon the inference that could be drawn from the defendant's 'beware of dog' sign that they had knowledge of the dog's vicious propensities. Other cases have held that a court should not grant summary judgment against a party even where the party offers no evidence supporting the claim. *Under current law, a defendant may be entitled to a directed verdict at trial when the plaintiff has not presented evidence to support the essential element of a claim. The same should be true for a summary judgment.* Currently, the defendant cannot rest on a showing that the plaintiffs, that the plaintiff has no proof, and I cite *Reed v. Jackson County*, [105 Or App 24, 803 P2d 1194 (1990), *rev den*, 311 Or 261 (1991),] *Tozer v. City of Eugene*, [115 Or App 464, 838 P2d 1104 (1992)] and *Carr v. Jefferson Foods, Inc*, [106 Or App 12, 805 P2d 753 (1991)]. As a result, Oregon courts have been extremely reluctant to grant summary judgment motions. Senate Bill 385 recognizes that summary judgment rules should be utilized to facilitate effective use of the court by creating a quick, early and inexpensive method of determining the case present [*sic*] on a triable issues [*sic*] of fact. The bill provides that no genuine issue as to a material fact exists if based upon the record before the court, viewed in a manner most favorable to the adverse party — the person who the motion's being asserted against — that no objectively reasonable juror could find, or could return a verdict for the adverse party. *The amendment is intended to give the courts significantly greater latitude in disposing of cases by way of summary judgement, especially where the opposing party has no evidence to support his or her claim.* It makes sense; it saves both sides attorney fees and costs in doing this." Tape Recording, Senate Floor Debate, May 25, 1995, Tape 148, Side A at 226-55 (emphasis supplied).

■      Accordingly, the determination of whether or not there is a "genuine issue of material fact" under the amendment to ORCP 47 is made on the evidence of *both* parties. That changes the law in Oregon. Now it may well be that, to

counter evidence presented by the moving party, the *non-moving* party will have to show the existence of more than a "scintilla" of evidence on its claim.

The concurrence does not agree that the amendment to ORCP 47 changes Oregon law on summary judgment. It concludes that the amendments to ORCP 47 C "accomplish * * * a codification of the standard expressed in *Seeborg v. General Motors Corporation*, 284 Or 695, 588 P2d 1100 (1978), a standard from which our recent opinions are perceived — understandably — to have strayed." 139 Or App at 265. Although the concurrence claims to arrive at that conclusion without resort to legislative history, its analysis does not demonstrate how that can be so, and its conclusion ultimately rests on its interpretation of that history.

It is difficult to understand how any amendment can be said to codify case law without resort to legislative history, particularly when the "codified" case was decided in 1978 and the amendatory language was added in 1995. The concurrence appears to find that legislative history is not necessary because "the amendatory language is remarkably similar to the Supreme Court's language in *Seeborg*." 139 Or App at 267. However, the language is also "remarkably similar" to that in *Matsushita*, as we have already noted. 139 Or App at 253. In other words, "remarkably similar" is not the same as identical, and to say that amendatory language refers to one case as opposed to another necessitates a look at legislative history. Here, that history does not refer to *Seeborg*; *Matsushita* was at least before the legislature.

Having decided that the amendatory language necessarily relates to *Seeborg*, the concurrence bolsters its position by stating that "[l]egislatures codify case law all the time[.]" 139 Or App at 267. We do not quarrel with that truism, but the cases cited by the concurrence, 139 Or App at 267 n 2, do not advance its argument. *Fullerton v. Lamm*, 177 Or 655, 163 P2d 941, 165 P2d 63 (1946), and *State v. Jackson*, 224 Or 337, 356 P2d 495 (1960), deal with codifications of common law rules. *Friends of Neabeack Hill v. City of Philomath*, 139 Or App 39, 911 P2d 350

(1996), also cited by the concurrence, likewise was concerned with the codification (or more correctly modification) of a judicially created doctrine, a fact made abundantly clear by the legislative history references to *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). Those cases, thus, are unlike *Seeborg*, in which "the court construed ORS 18.105(4), the precursor to ORCP 47 C." 139 Or App at 267 n 1. Under the interpretation of the concurrence, the 1995 amendatory language codifies 1978 case law that, in turn, interpreted a legislative enactment.

The concurrence also does not explain why the "codification" of *Seeborg* stops at *Seeborg*. That is, as the concurrence notes, both we and the Supreme Court have cited *Seeborg* as the "definitive statement of the summary judgment standard under ORCP 47 C." 139 Or App at 267 n 1. Obviously, we thought that we were applying the *Seeborg* standard, and the concurrence does not explain how the amendatory language, which it finds unambiguous, tells this court that we have been wrong. That we have been is apparent only from the legislative history, on which the concurrence eventually relies to "redirect" us to the proper interpretation of *Seeborg*. The concurrence concludes that, in the context of the legislative history,

> "the amendment's reference to language that recalls *Seeborg* makes sense: The legislature wanted courts — in particular, this court — to jettison the 'any doubt' standard that has crept into the case law in recent years and to return to the directed verdict standard that *Seeborg* requires."[7] 139 Or App at 273.

The concurrence also takes issue with our recitation of legislative history. It finds that the comments of a witness before a legislative committee cannot be taken "to reflect the intentions of the legislature." 139 Or App at 271. Whatever the theoretical merits of that position, the Supreme Court has made it clear that observations of witnesses may be the definitive component of legislative history. *See, e.g., Zidell Marine Corp. v. West Painting, Inc.*, 322 Or 347, 359, 906 P2d 809 (1995) (court found that "legislative history is clear" on

---

[7] Apart from referring to language in *Seeborg*, the concurrence does not explain what the amendment requires that we do differently in analyzing summary judgment.

basis of testimony from witnesses for Oregon Collectors Association when no members of legislative committee challenged or disagreed with the reading). Here, even if Brunett's testimony is to be discounted, Max Williams, counsel for the Senate Judiciary Committee, explained the purpose of the proposed amendment was "to move Oregon's summary judgment standard closer to that standard used by the federal courts." No committee member challenged that statement.

The concurrence finds that Williams' explanation merely states "precisely what *Seeborg* already requires." 139 Or App at 272. In *Seeborg*, the court's interpretation depended on FRCP 56(e), "the model for ORS 18.105(4)," 284 Or at 700, and the discussion of that rule in 10 Wright & Miller, *Federal Practice and Procedure*. However, *Seeborg* was a 1978 case. The definitive United States Supreme Court decisions on summary judgment date from 1986. In other words, moving the Oregon summary judgment standard closer to the federal rule does not merely restate *Seeborg*: The federal interpretations on which *Seeborg* relied have changed.

In short, the text of the amendment to ORCP 47 C is not clear, nor is it clear when considered in context. However, the legislative history is clear that the amendment was intended to move summary judgment in Oregon closer to the federal practice. Nothing the concurrence says persuades us otherwise.

■ Applying the new standard of review, we turn to the merits, mindful that, even under the federal standard, tort actions generally are not disposed of by summary judgment because they typically involve a myriad of factual issues. *Miller v. A. H. Robbins Co., Inc.*, 766 F2d 1102, 1004 (7th Cir 1985). Plaintiff first argues that the court erred in finding that the patrol car was not unreasonably dangerous as a matter of law. He asserts that whether a product is unreasonably dangerous is ordinarily a question for the jury. He argues that there was sufficient evidence to withstand a motion for summary judgment because the conflicting testimony of Schenfeld and Denkers concerning the cause of the water in the passenger compartment created a question of

fact for the jury to decide. *Heaton v. Ford Motor Co.*, 248 Or 467, 473, 435 P2d 806 (1967).

■ ORS 30.900 *et seq* sets forth Oregon's products liability law. ORS 30.920[8] adopts *Restatement (Second) of Torts* section 402A (1965), which provides a strict liability cause of action for injury caused by products that are in an unreasonably dangerous defective condition and specifically incorporates by reference *comments a* through *m*. After adopting the section in *Heaton*, before the enactment of ORS 30.902, the Oregon Supreme Court applied section 402A in strict liability cases. The standard by which unreasonably dangerous is measured is the "consumer contemplation test" in *comment i. Ewen v. McLean Trucking Co.*, 300 Or 24, 27, 706 P2d 929 (1985). *Comment i* provides:

> "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

■ In *Heaton* and in *Cornelius v. Bay Motors*, 258 Or 564, 484 P2d 299 (1971), the Supreme Court discussed the role of the court and jury in determining when a product is unreasonably dangerous to the ordinary consumer. It determined that, in the "ordinary case," which includes a case in which there is at least some direct evidence that the product involved was defective, whether the product was "unreasonably dangerous" is a question of fact for the jury. *Cornelius*, 258 Or at 573. The members of the jury may draw upon their experiences and observations to establish the standard against which to appraise the defendant's conduct. *Heaton*, 248 Or at 478. Thus, in the "ordinary" products liability case, it is a question for the jury whether a product is dangerous to an extent beyond that contemplated by the ordinary consumer.

Here, the basis of the alleged defect is not entirely clear from plaintiff's pleadings — that is, it is not clear

---

[8] ORS 30.920(1) provides:

"One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition * * *."

whether plaintiff is alleging a design defect, a manufacturing defect, or both. In all events, defendants' argument is that, even assuming the truth of plaintiff's allegation that a defect allowed unwanted moisture to enter the car, there is no evidence that this condition presented an unreasonable danger to an ordinary consumer. Defendants contend that common sense requires a finding that an ordinary consumer would not consider this an unreasonable danger, and, therefore, there is no genuine issue of material fact as to whether the alleged defective condition was unreasonably dangerous, as required by ORS 30.920.

■ Defendants' "common sense" argument presents a jury question. There was sufficient evidence at summary judgment to create a "genuine" issue of fact under the new standard in ORCP 47 as to whether the squad car was "dangerous to an extent beyond that which would be contemplated" by the ordinary consumer of that product. *Restatement (Second) of Torts* § 402A, *comment i*. Plaintiff, the nonmoving party, offered deposition testimony of Schenfeld from which a jury could conclude that water entered through the unsealed area between the engine and passenger compartment. Whether the ordinary consumer would conclude that the presence of water in unexpected areas made the product "unreasonably dangerous" is a question for the jury. Consequently, the trial court erred in granting summary judgment on the ground that defendants' product was not unreasonably dangerous as a matter of law.

Defendants argue, however, that they are entitled to summary judgment on plaintiff's strict liability claim for an alternative reason. They argue that plaintiff failed to provide any evidence that the car was in a defective condition when it left their control, an element of plaintiff's *prima facie* case. *See* ORS 30.920(1)(b); *Restatement (Second) of Torts* § 402A, *comment g*. They also contend that alteration or modification of a product is a defense to a product liability claim pursuant to ORS 30.915(1)-(3),[9] and that "it is undisputed the

---

[9] ORS 30.915 provides:

"It shall be a defense to a product liability civil action that an alteration or modification of a product occurred under the following circumstances:

"(1) The alteration or modification was made without the consent of or was made not in accordance with the instructions or specifications of the manufacturer, distributor, seller or lessor;

modification was the most likely cause of the alleged water entry." Plaintiff disputes that claim. He argues that the conflicting testimony of the mechanics created a question of fact as to whether the gap in the sealant or holes drilled by the City's mechanics allowed water to leak into the passenger compartment.

We agree with plaintiff. Schenfeld's testimony is evidence from which a jury could infer that the water in the passenger compartment was caused by a manufacturing defect rather than the subsequent modification. There was sufficient evidence under the amendment to ORCP 47 to create a jury question as to whether the car was defective when it left defendants' control.

ORS 30.915(2) provides that the alteration or modification must be a *"substantial* contributing factor to the personal injury, death or property damage[.]" (Emphasis supplied.) However, given the conflicting testimony as to what caused water to enter the passenger compartment, we cannot say as a matter of law that the drilled holes substantially contributed to the entry of water into the passenger compartment and, ultimately, to plaintiff's alleged injuries.

Defendants argue, however, that summary judgment was correct on both the claim for strict liability and the claim for negligence because plaintiff did not prove that an ordinary user or consumer would have experienced a similar reaction if exposed to the alleged defective condition. Defendants point out that Oregon courts have not examined the issue of whether a manufacturer should be held liable for injuries resulting from an unusual allergic reaction. They argue that most jurisdictions have refused to impose liability. Plaintiff does not contend that Oregon should not follow the majority rule but argues that defendants "might have a defense" if they had produced evidence that his response to

---

"(2) The alteration or modification was a substantial contributing factor to the personal injury, death or property damage; and

"(3) If the alteration or modification was reasonably foreseeable, the manufacturer, distributor, seller or lessor gave adequate warning."

the defect in the patrol car is so "extremely rare" that no manufacturer could have foreseen the harm. Plaintiff contends that defendants have not produced that evidence.

■ Plaintiff's argument is based on an erroneous understanding of the respective burdens of production and proof of the idiosyncratic allergic response "defense." That "defense" is not, in fact, a matter of affirmative defense for which a defendant bears the ultimate burden of persuasion. Instead, courts construing that "defense" have recognized it involves a two-step process. First, the defendant has the burden of producing evidence that the plaintiff's injury from use of the defendant's product is the result of an allergic response. Second, after the defendant has satisfied that initial burden of production, the plaintiff bears the burden of proving that his or her reaction, rather than being idiosyncratic, could be experienced by an identifiable class of consumers. *See, e.g., Adelman-Tremblay v. Jewel Companies, Inc.*, 859 F2d 517 (7th Cir 1988); *Howard v. Avon Prods., Inc.*, 155 Colo 444, 395 P2d 1007 (1964). That allocation of the burdens of production and persuasion conforms to the rationale for the idiosyncratic reaction rule:

> "The reason most often quoted to support the general rule denying recovery to unusually allergic users of products was articulated by the Supreme Court of Utah:
>
>> " 'Every substance, including food which is daily consumed by the public, occasionally becomes anathema to him peculiarly allergic to it. To require insurability against such an unforeseeable happenstance would weaken the structure of common sense, as well as present an unreasonable burden on the channels of trade.'
>
> "*Bennett v. Pilot Prods. Co.*, 120 Utah 474, 478, 235 P2d 525, 527 (1951)." *Adelman-Tremblay*, 859 F2d at 524.

Here, defendants proffered plaintiff's chart notes, which included his physician's notes that plaintiff "appears to have a predisposition to sensitivity to these substances." Plaintiff argues, however, that the physician's notes were inadmissible evidence that could not be considered on summary judgment. In particular, he asserts that there was inadequate foundation for admitting the notes, as required

by OEC 803(6), because there was no testimony of the custodian of the records. However, plaintiff has waived that objection. Indeed, plaintiff himself attempted to submit the chart notes by filing with the court affidavits of *counsel* attesting that the records were kept in the ordinary course of business. Thus, defendants, by proffering the chart notes, satisfied their burden of producing evidence that plaintiff's injuries were the result of an allergic reaction.

■      Because defendants met their burden of production, plaintiff was then obligated to present evidence that his reaction was not idiosyncratic. He failed to do so. Thus, defendants would be entitled to summary judgment under the new formulation of the amended ORCP 47 C. That is, plaintiff as the party who bore the ultimate burden of persuasion on the "nonidiosyncracy" of the allergic response, failed to offer any evidence on which a reasonable juror could have returned a favorable verdict on that issue.

However, we cannot affirm summary judgment on that basis. Here, the rules governing plaintiff's obligation to present evidence in opposing summary judgment changed in mid-appeal. At the time the trial court entered summary judgment, defendants as the moving parties, and not plaintiff, had the burden of producing evidence both of allergic reaction and of idiosyncracy. They presented evidence of the former, but not the latter. Thus, under the then-existing standard of summary judgment, defendants, not plaintiff, failed in their proof.

The goal posts have moved. In these circumstances, plaintiff cannot be faulted for failing to offer evidence that his reaction was not idiosyncratic. Due process requires that plaintiff be given the opportunity to proffer such evidence and, in so doing, to meet the new evidentiary burdens imposed by the amendment to ORCP 47 C.

■      Defendants also argue that they are entitled to judgment on plaintiff's negligence claim, because there is no evidence that defendants engaged in any conduct that created a foreseeable risk of the kind of harm that plaintiff claims he suffered. Foreseeability is generally a question for the jury. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987). However, we cannot say whether the

evidence on remand will show that the factual situation is so unusual that, under the amendment to ORCP 47, the court may conclude that there can be no dispute over plaintiff's injury or over the effectiveness of actions or devices which might have prevented injury. *See Dahl v. BMW*, 304 Or 558, 565, 748 P2d 77 (1987).

Reversed and remanded for further proceedings.

**LANDAU, J.,** concurring.

I agree with the majority that the trial court erred in granting defendant's motion for summary judgment and that this case should be reversed and remanded. I do not, however, agree with the majority's reasoning. In particular, I do not agree that reversal is required by virtue of a change in summary judgment law, supposedly occasioned by 1995 amendments to ORCP 47 C. The majority concludes that those amendments effectively "federalize" Oregon summary judgment law, which includes the creation of an entirely new burden on the part of the *nonmoving* party to establish the existence of a genuine issue of material fact. In my view, the recent amendments to ORCP 47 C accomplish a far more modest result, namely a codification of the standard expressed in *Seeborg v. General Motors Corporation*, 284 Or 695, 588 P2d 1100 (1978), a standard from which our recent opinions are perceived — understandably — to have strayed. I would reverse under that standard, not the "federalized" version that the majority applies.

At issue is the proper construction of certain amendments to ORCP 47 C, represented by the bolded language:

"The motion and all supporting documents shall be served and filed at least 45 days before the date set for trial. The adverse party shall have 20 days in which to serve and file opposing affidavits and supporting documents. The moving party shall have five days to reply. The court shall have discretion to modify these stated times. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. **No genuine issue as to a material fact**

**exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."**

1995 Or Laws, ch 618, § 5 (bold in original).

In construing the amendatory language, our task is to ascertain the intentions of the legislature, taking as the first and best evidence of those intentions the language that the legislature enacted. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). If that inquiry does not clearly reveal the legislature's intentions, we are permitted to consider also legislative history and other aids to construction. *Id.*

At the outset, I find significant that the amendments to ORCP 47 C do not delete or amend other language in the rule; instead, they only add language to the rule. That is important, because the language that the legislature did *not* change has been construed. First, the courts have consistently held that the moving party bears the burden of proving the absence of a genuine issue of material fact, even as to issues on which another party might bear the burden of proof at trial. *See, e.g., Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 613, 892 P2d 683 (1995); *Welch v. Bancorp Management Services*, 296 Or 713, 716, 679 P2d 866 (1984); *Taylor v. Baker*, 279 Or 139, 149, 566 P2d 884 (1977). The party opposing the motion has no duty to offer any evidence at all until the moving party has produced evidence that would justify a directed verdict. *Taylor*, 279 Or at 149. Second, in determining whether the moving party has satisfied that burden, the following standard applies:

"In deciding whether a genuine issue of fact exists, courts generally read 'genuine issue' to mean 'triable issue.' Before a party has a triable issue, he or she must have sufficient evidence to be entitled to a jury determination. This has led both courts and commentators to compare the motion for summary judgment to the motion for a directed verdict."

*Seeborg,* 284 Or at 700.[1]

The question before us, then, is the effect of the new language in ORCP 47 C on the existing language, as it has been construed by the courts. In that regard, I observe that there is no language referring to the "federalization" of Oregon summary judgment law. In particular, there is no language remotely suggesting an intention to alter the burden of proof. Nor is there wording that, reasonably construed, supports a conclusion that the legislature intended to alter the definition of "genuine issue" of material fact, as described in *Seeborg.*

To the contrary, the amendatory language is remarkably similar to the Supreme Court's language in *Seeborg.* As the majority opinion aptly concedes:

> "On its face, the added language is capable of meaning exactly the same thing as the existing law. Its references to the way in which the record is viewed and to an 'objectively reasonable juror's' ability to find for the nonmoving party signal more of an adherence to than a departure from the existing standards."

139 Or App at 250. Why, then, does the majority insist that the language means something other than what it clearly says? The majority offers several reasons, none of which I find persuasive.

First, the majority opinion relies on a presumption "that the legislature intended the amendment to mean something." 139 Or App at 250. I have no quarrel with the presumption. I do, however, quarrel with its application to this case. The majority opinion appears to assume that a statutory codification of case law does not "mean something." That is simply wrong. Legislatures codify case law all the time, and we have never held such actions to be meaningless.[2]

---

[1] In *Seeborg,* the court construed ORS 18.105(4), the precursor to ORCP 47 C. Nevertheless, the decision continues to be cited both by the Supreme Court and this court as the definitive statement of the summary judgment standard under ORCP 47 C. *See, e.g., Ledford v. Gutoski,* 319 Or 397, 403, 877 P2d 80 (1994); *Cropp v. Interstate Distributor Co.,* 129 Or App 510, 512, 880 P2d 464, *rev den* 320 Or 407 (1994).

[2] ORS 174.040, for example, codifies a longstanding, judicially-created rule regarding the severability of statutes. *Compare* ORS 174.040 *and Fullerton v. Lamm,* 177 Or 655, 696-97, 163 P2d 941, 165 P2d 63 (1946). No court ever has

Second, the majority opinion suggests that there is ambiguity in the language of the amendment. The opinion singles out

> "the emphasis in the amendment on the hypothetical juror's objectivity and reasonableness, and on the court's considera-tion of the whole record before it, could plausibly be read to mean that the court must do *some* weighing and, in some way, evaluate what an objective and reasonable juror *could* think."

139 Or App at 250 (emphasis in original). The linchpin of that argument rests, however, on an incorrect assumption that the current standard does not require precisely the same sort of limited weighing. Under the current rule, the summary judgment standard is equated with that of a directed verdict, which, in turn, is permissible only "when a reasonable person could draw but one inference from the facts" and that inference supports a finding for the moving party. *See, e.g., Bidiman v. Gehrts*, 133 Or App 145, 147, 890 P2d 436, *rev den* 321 Or 512 (1995); *Kohler v. Alspaw*, 132 Or App 67, 69, 887 P2d 832 (1994), *rev den* 321 Or 94 (1995); *Van Den Bron v. Fred Meyer, Inc.*, 86 Or App 329, 331, 738 P2d 1011 (1987). Thus, courts always have been required to do the same sort of limited weighing in evaluating motions for summary judgment that the majority opinion says is newly suggested by the amendments to ORCP 47 C.

The majority opinion also finds ambiguity because

> "the reference to the record before the court, plausibly, could contemplate that both parties' showings are germane to whether a triable factual question exists, and that the bur-den does not fall solely on the moving party."

139 Or App at 250. I fail to understand how the words "based upon the record before the court" plausibly suggest an

---

suggested that the statute must mean something else, merely because it reite-rated the common law rule. *See, e.g., State v. Jackson*, 224 Or 337, 343, 356 P2d 495 (1960) ("ORS 174.040 does no more than to codify what has long been the common law rule of construction in this state"). To cite a more recent example, we held that the 1993 Legislative Assembly enacted the first three subsections of ORS 197.829(1) to codify a judicially-created doctrine of deference to local govern-ment interpretations of local land use legislation. *Friends of Neabeack Hill v. City of Philomath*, 139 Or App 39, 45-46, 911 P2d 350 (1996).

intended alteration of the existing rule that the moving party bears the burden of proving the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. At least as early as *Seeborg*, 284 Or at 699, courts have been required to evaluate the existence of a genuine issue of material fact "on the record" before them. *See, e.g., Hampton Tree Farms*, 320 Or at 613; *Richards v. Dahl*, 289 Or 747, 749-54, 618 P2d 418 (1980); *Taylor v. Hender*, 116 Or App 142, 144-45, 840 P2d 1331 (1992).

Third, the majority opinion relies on the legislative history of the bill that resulted in the amendment to ORCP 47 C. At the outset, I do not agree that it is appropriate even to resort to the legislative history. Legislative history cannot *create* meaning; it can only *clarify* the meaning of words actually enacted by the legislature. As we said in *Eslamizar v. American States Ins. Co.*, 134 Or App 138, 145 n 3, 894 P2d 1195, *rev den* 322 Or 228 (1995):

> "Whatever the legislative history reveals, we are constrained to give effect to the language that the legislature actually enacted[.] * * * If it is not what the legislature intended, then the legislature has made a mistake, and only the legislature may remedy it."

*See also Fernandez v. Board of Parole*, 137 Or App 247, 252, 904 P2d 1071 (1995) ("we are constrained by the reasonable construction of language that the legislature actually enacted"); *Faverty v. McDonald's Restaurants*, 133 Or App 514, 533, 892 P2d 703, *rev allowed* 321 Or 512 (1995) ("Inchoate intentions are not law, only those intentions that are manifested in language that is enacted."). In this case, whatever the legislative history shows, the fact remains that the language of the enacted amendment itself does not contain words that reasonably may be construed to effect the wholesale "federalization" of Oregon summary judgment law. On its face, it says nothing more than what the Supreme Court already said in *Seeborg*.

Having said that, I also do not find the legislative history as conclusive as does the majority. To be sure, some of that history shows that at least some of the members of one house of the Legislative Assembly believed that the amendments to ORCP 47 C effectively federalized Oregon summary judgment law. Other portions of the history, if anything,

suggest a different view of what was meant by "federalizing" summary judgment law.

In reviewing the legislative history, I note that the case law is not particularly helpful. Neither this court nor the Supreme Court has developed any standards by which we should evaluate the probative value of one type of history or another. The past practice of both courts has generally been to seize upon any "snippet" revealed in the legislative history that proves a point and assume that it represents the views of the Legislative Assembly as a whole.[3] To make matters worse, the courts have been hopelessly inconsistent in their treatment of legislative history. In just the last year, for example, the Supreme Court has held in one case that the views of a single witness testifying before a committee are not reliable evidence of the intentions of the legislature as a whole, *State v. Guzek*, 322 Or 245, 261, 906 P2d 272 (1995), and, in another case, that the views expressed by a single witness testifying before a committee are entirely satisfactory to express the intentions of the entire legislature, *Zidell Marine Corp. v. West Painting, Inc.*, 322 Or 347, 358-59, 906 P2d 809 (1995).

The majority's reliance on legislative history in this case exemplifies the problems that result from the current muddled state of the case law. The majority, not surprisingly, relies on the statements of Senator Bryant on the floor of the Senate. Those statements certainly show what Senator Bryant believed to be the effect of passage of the amendments, and perhaps even what the Senate — or at least a majority of it — intended when it passed the bill before it. Nevertheless, I do not understand how his statements can be taken to reflect the views of the House, which never heard them.

---

[3] The Supreme Court, for example, has relied on the statements of the person requesting introduction of the bill, *Braun v. American International Health*, 315 Or 460, 465, 846 P2d 1151 (1993); of a nonlegislator member of an advisory committee, *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 175, 818 P2d 1270 (1991); of a lobbyist, *Henthorn v. Grand Prairie School Dist.*, 287 Or 683, 689-90, 601 P2d 1243 (1979); of a citizen who would be affected by the passage of the bill in question, *Sager v. McClenden*, 296 Or 33, 37-38, 672 P2d 697 (1983); on the history of an *unsuccessful* bill on a subject related to the one in question, *Davis v. O'Brien*, 320 Or 729, 743, 891 P2d 1307 (1995); and even on the *absence* of legislative history entirely, *id.*

The majority's reliance on the statements of Professor Brunet are even more troubling. Brunet testified before a Senate subcommittee *in opposition* to Senate Bill 385, which, at the time, did not even contain the language at issue. The majority opinion does not explain precisely how it is that Professor Brunet's comments may be taken to reflect the intentions of the legislature. Even assuming that his comments were probative of the intentions of the subcommittee members who actually heard him testify, the fact remains that the Senate Judiciary Committee did not hear him testify. Neither did the balance of the members of the Senate nor, for that matter, anyone in the entire House. The majority does not explain, and I do not understand, by what fiction the comments of a witness, which an entire house of the legislature did not even hear, can reasonably be taken to represent the views of the legislature as a whole, or even a majority of it.

Aside from those theoretical problems, the majority opinion fails to place the statements of Professor Brunet in proper context. It omits a critical statement that sheds light on what Professor Brunet meant by his reference to "federalizing" summary judgment. After offering the suggestion that the legislature should "federalize" summary judgment law in Oregon, he said of his suggestion:

> "It's not currently, of course, in this bill, but it's in another bill that you should give a lot of attention to."

Tape recording, Senate Judiciary Subcommittee on Civil Process, February 20, 1995, Tape 19, Side A at 97. That other bill, Senate Bill 608, proposed to amend ORCP 47 C by adding the following language:

> "[Summary judgment may be granted if, in addition to current requirements,] the opposing affidavits and supporting documentation submitted by the adverse party fail to set forth specific facts supported by admissible evidence adequate to avoid the granting of a motion for a directed verdict in a trial of the matter."

That bill died in committee. At one point, the subcommittee considered inserting the foregoing language into Senate Bill 385, but it rejected that proposal, too. *See* Tape recording, Senate Judiciary Subcommittee on Civil Process, March 6, 1995, Tape 33, Side A at 310; memorandum from Max

Williams, Committee Counsel, to David Heyndrickx, Legislative Counsel 4 (February 28, 1995). Under the circumstances, it is especially difficult to understand how Brunet's statements reflect the views of the legislature as a whole about the intended meaning of the language that it did adopt, when the subject of his testimony was language that it did *not* adopt.

The majority opinion also relies on a single statement of counsel for the Senate Judiciary Committee, Max Williams. Committee Counsel, of course, is not a member of the legislature. Aside from that, it is not clear to me how Williams's statement supports the majority opinion's broad holding. All he said was that the proposed amendment was intended to

> "overrule certain Oregon Court of Appeals cases with respect to summary judgment, in an effort to move Oregon's summary judgment standard closer to that standard used by the federal courts."

Tape recording, Senate Judiciary Subcommittee on Civil Process, May 8, 1995, Tape 147, Side A at 345-55. That is a far cry from saying, as the majority opinion does, that the amendment was intended to "federalize" all of Oregon summary judgment law. There is no mention of shifting burdens of proof or of overruling *Seeborg, Hampton Tree Farms, Welch, Taylor* or any other of the long line of Supreme Court cases on the nature of the showing required under ORCP 47 C. Indeed, the context for Williams's remarks shows that he meant no more than what he said. He explained what he meant by "mov[ing] Oregon's summary judgment standard" closer to the federal rule as merely "applying essentially a directed verdict standard." *Id.* That is precisely what *Seeborg* already requires.

Williams's explanation closely tracks Brunet's testimony, in which the latter acknowledged that the current Oregon rule actually matches "almost word-for-word," the standard set out in the federal rule, and explained that the real problem is that the Oregon Court of Appeals simply has failed to follow it. Tape recording, Senate Judiciary Subcommittee on Civil Process, February 20, 1995, Tape 19, Side A at 115. Instead, said Brunet, this court has applied what he termed an "any doubt" standard, which means that

summary judgment will not be allowed if there is any doubt as to the existence of an issue of fact.[4] Brunet is not the first to have made that observation about our decisions. *See, e.g.*, Janice R. Wilson, *Summary Judgments, Pleading and Practice* § 43.22 (1994) ("As the Oregon Court of Appeals has applied these standards in recent years, any dispute, however farfetched the opponent's position might be, seems to justify a denial of a summary judgment motion.").

In that context, the amendment's reference to language that recalls *Seeborg* makes sense: The legislature wanted courts — in particular, this court — to jettison the "any doubt" standard that has crept into the case law in recent years and to return to the directed verdict standard that *Seeborg* requires.

One final matter deserves at least passing reference. The Supreme Court has just issued an opinion in *Doe v. American Red Cross*, 322 Or 502, 910 P2d 364 (1995), in which it affirmed our reversal of a summary judgment on the ground that the *moving* party had failed to demonstrate the absence of a genuine issue of material fact. The court's opinion, however, made no mention of the amendments to ORCP 47 C. I, frankly, do not know what to make of that, except perhaps that the Supreme Court either does not think the amendments substantially change existing law or that it believes that those amendments simply do not warrant discussion.

In short, I am not persuaded by any of the proferred bases for the majority opinion's broad holding that Oregon summary judgment law has been "federalized." I would hold that the amended rule merely clarifies what always has been the law in this state, namely, that summary judgment may be granted only if the moving party demonstrates the

---

[4] Brunet explained:

"In the federal system, summary judgments are readily granted and routinely affirmed on appeal. However, Oregon's Rule 47, while much the same as the federal rule in text, has been hurt greatly by a series of appellate reversals of summary judgment. In essence, the Oregon Court of Appeals will reverse a summary judgment order if there is 'doubt' about whether a genuine issue of material fact exists."

Testimony, Senate Judiciary Subcommittee on Civil Process, February 20, 1995, Ex. F at 5 (citation omitted).

absence of a genuine issue of material fact and entitlement to judgment as a matter of law. In reviewing the trial court's entry of summary judgment for defendants, therefore, I would apply the rule, as amended, with the foregoing understanding in mind, not the majority's "federalized" version.

First, as to plaintiff's argument that defendants failed to establish an absence of a genuine issue of material fact concerning the unreasonably dangerous nature of the automobile, under either standard, the trial court erred. As the majority correctly holds, under *Cornelius v. Bay Motors*, 258 Or 564, 573-75, 484 P2d 299 (1971), and *Heaton v. Ford Motor Co.*, 248 Or 467, 471-74, 435 P2d 806 (1967), that plaintiff's direct evidence of a defect creates a question of fact as to the unreasonably dangerous nature of the car.

Second, as to plaintiff's argument that there is a genuine issue of material fact concerning whether the automobile left the manufacturer in a defective condition, again, under either standard, the conflicting testimony of the various mechanics creates a jury question.

Third, as to defendants' argument that summary judgment nevertheless was correctly entered because of plaintiff's unusual allergic condition, the application of the correct standard does make a difference. The majority, applying the federal standard, holds that plaintiff — although the nonmoving party — is required to establish that his reaction to the defect in the patrol car was not idiosyncratic. The majority concludes that, because plaintiff failed to do that, defendants would be entitled to summary judgment. The majority declines to hold plaintiff to that standard retroactively, and remands the case to give plaintiff an opportunity to meet that burden.

I find no need to do that. Applying the correct standard, defendants bear the burden of establishing an absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, even on issues as to which plaintiff might bear the burden at trial. *Hampton Tree Farms*, 320 Or at 613; *Welch*, 296 Or at 716; *Taylor*, 279 Or at 149. That means that defendants must establish the

existence of the idiosyncracy in order to obtain summary judgment. They offered no evidence on that point. Accordingly, they were not entitled to summary judgment. I would reverse on that basis and not require the trial court to have the parties argue the summary judgment motions all over again under an incorrect "federalized" standard.

Warren, Edmonds and Armstrong, JJ., join in this concurrence.